UNITED STATES, Appellee

v.

JACKEY E. McCLENNY, Private, U. S. Marine Corps, Appellant

5 USCMA 507, 18 CMR 131

No. 5492

Decided March 4, 1955

CDR James A. Brough, USN, and LCDR John J. Nelson, USNR, for Appellant.

CDR G. H. Rood, USN, and CDR E. L. McDonald, USN, for Appellee.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A special court-martial convicted the accused of two specifications of unauthorized absence, in violation of Article

86, Uniform Code of Military Justice, 50 USC § 680. Considering four previous convictions, the court sentenced him to a bad-conduct discharge, three months' confinement, and partial forfeiture of pay. Intermediate appellate authorities have affirmed. We granted review to consider the following issue:

"Whether the convening authority was disqualified by reason of his authenticating certain exhibits introduced into evidence."

Colonel J. F. Dunlap, Commander, Marine Barracks, U. S. Fleet Activities, Japan, convened the court which tried the accused. He is also connected with certain documents admitted into evidence at the trial. These are extracts from accused's service record and from the Unit Diary of his organization. Typical of the former is the following:

"19 Mar 54
MB, USFA, Yokosuka, Japan
UA (AOL) since 0001, 16 Mar 54. Abs reported on UD #63–54 dtd 17 Mar 54.

/s/ J. A. WITHERSPOON
J. A. WITHERSPOON

(Pros Ex I) LtCol, USMC, Executive
Officer by direction of
J. F. DUNLAP, Colonel,
USMC, Commanding."

The latter extracts also show the accused's unauthorized absences and his returns to military control. Illustrative of these is the following:

"MC CLENNY Jackey E 1226850 Pvt 0300 MC
To UA–AOL since 0001 16 Mar 54

• • • • •

Authentication

I CERTIFY that this diary is correct in accordance with records of this unit.

Name J. F. DUNLAP Rank COL
Date 17 Mar 54 Diary No. 63–54
Page 1 of 1 pages."

The service record entries were offered by, and received in evidence for, the prosecution. The Diary entries were obtained at the express request of the court.

The accused now contends that Colonel Dunlap's connection with these exhibits made him a witness against the accused; consequently, he became an accuser, and was disqualified to act as convening authority.

Under the Uniform Code of Military Justice, a witness for the prosecution is not eligible to serve as ▌ either a member of the court or as the law officer. Articles 25, 26, Uniform Code of Military Justice, 50 USC §§ 589, 590. In

United States v. Moore, 4 USCMA 675, 16 CMR 249, a court-martial member had authenticated an official record which was admitted into evidence. We held that the authentication provided the necessary predicate for admission of the record, and the member thereby became a witness. Since Colonel Dunlap authenticated the Unit Diary extracts, the Moore case impels the conclusion that he was a witness with respect to them. As for the service record entries, it is not so clear that use of the "By Direction" phrase constitutes Colonel Dunlap a witness in regard to them. See: Marine Corps Manual, § 15053; cf. United States v. Hagen, 2 USCMA 324, 8 CMR 124; United States v. Parlier, 1 USCMA

**509**

433, 4 CMR 25. But, for the purposes of this case, especially since the substance of the entries is the same as those in the Unit Diary, we may assume that Colonel Dunlap was also a witness as to them. However, nothing in the Uniform Code, or █ the Manual for Courts-Martial, prohibits a convening authority from appearing as a prosecution witness. Nevertheless, the accused urges us to create judicially the same disqualification that Congress created for a member and the law officer.

The omission by Congress and the President of a specific statement of condemnation does not mean that this Court is powerless to condemn conduct which destroys the integrity of a trial. On the contrary, it is not only within our power, but it is our duty to guard against any infringement of the fundamentals of a fair trial. But, a mere claim of improper conduct is not enough. It must be conduct which a reasonable person would regard as clearly destructive of the fairness of the proceedings. The mere appearance by a convening authority as a witness against an accused does not necessarily imply impropriety. A great deal depends upon the nature of his testimony. Almost every act by a military commander in the normal performance of his duties is connected with the personnel of his command. The connection, however, is entirely official. In fact, in the higher echelons the commanding officer may not know anything whatever about a particular person under his jurisdiction. Yet, in a given case, he may be called upon to provide evidence of an official act which he took with respect to that individual. For example, he might issue an order which transfers the accused from one organization within the command to another. If it was necessary to produce that order in a court-martial proceeding against the accused, can we fairly say that the circumstances are so evil as to disqualify the convening authority?

No doubt there are situations in which the "appearance of evil must be avoided as much as the evil itself." United States v. Deain, 5 USCMA 44,

17 CMR 44. Still, even accepting this phrase as a formula for fairness, the present case hardly falls within it. An inference of injustice is neither so obvious nor so strong as to outweigh the probability of propriety. Of course, every witness at a trial places his credibility in the balance. Undeniably, a court would hesitate to discount the testimony of the convening authority. However, the same hesitancy would always obtain as to the testimony of any person holding a position of honor and trust. The value of a witness' testimony is, to some extent at least, predicated upon his standing in the community. Some witnesses are so generally regarded as truthful and accurate that their testimony is received with a predisposition of favor. Others fall into an opposite class. In either case the court still determines for itself the final weight to give to the testimony.

Apart from certain cases which approach the present problem from a different point of view, we have not been referred to any case which holds that the convening authority's mere appearance as a witness against an accused destroys ab initio his capacity to convene the court. Colonel Winthrop, in his frequently cited text, Military Law and Precedents, 2d ed, 1920 Reprint, seems to support a contrary conclusion. Remarking on the difficulty of determining when a convening authority may be considered an accuser, he said (page 62):

"... Nor is he to be deemed a 'prosecutor' merely for the reason that, having personal cognizance of the facts of the case, he contemplates being a material and important witness on the trial."

He then contrasts this situation with one in which a convening authority, convinced of the accused's guilt, "proposes, upon assembling the court, actively to promote the prosecution, as by instructing the judge advocate, facilitating the attendance of witnesses for the prosecution, appearing himself as a prosecuting witness." Ibid, page 63. These two quotations show a sharp dichotomy of approach to the problem of disqualification. On the

one side is a convening authority, with the objectivity of a disinterested person, who is called upon to testify because it appears that he has knowledge of facts bearing upon the issues before the court. On the other hand is the convening authority who is so personally interested in the outcome of the case as to take an active role in securing a conviction; as part of that role, he appears as a witness against the accused. The former may properly testify as a witness. The latter is disqualified to convene the court at the very outset of the case, whether or not he appears as an actual witness at the trial. United States v. Gordon, 1 USCMA 255, 2 CMR 161.

In the Gordon case, we emphasized that the disqualification of a convening authority must be predicated upon the conditions existing at the time he convenes the court. If he is not then disqualified, subsequent events cannot retroactively destroy his capacity. Disqualification, therefore, must rest, not on the mere fact that the convening authority appears as a witness against the accused, but on whether he was an accuser when he convened the court.

The determination of whether a convening authority is an accuser depends upon the facts in each case. In United States v. Gordon, supra, we noted that the test is objective. It must appear that "a reasonable person would impute to him [the convening authority] a personal feeling or interest in the outcome of the litigation." If the convening authority testifies at the trial, the character of his testimony may provide important evidence on the nature of his interest at the time he convened the court. This relationship was aptly described in United States v. Steed [ACM 3476], 4 CMR(AF) 522, 531:

"... Of course, the jurisdiction of the court is not dependent upon the events of the trial, the validity of its existence in this respect being determined by conditions as they existed where the court was convened, and whether the commander testi-

fies is material here only so far as it indicates the state of things when the court was convened."

It is not contended that, before referring the case for trial, the convening authority took any action which indicated that his interest was other than strictly official. Hence, his testimony is the only source from which an inference of personal feeling can be drawn. However, the accused maintains that we should look not to the content of the testimony but to the fact that it was given. From that alone, he would have us conclude that the convening authority was an accuser. To support his position, he relies heavily on United States v. Huff [ACM S–5455], 10 CMR 736. In that case, a divided board of review held that the admission in evidence of documentary matter, of the same kind as that here, made the convening authority an accuser. We do not agree.

Every entry in the accused's service record and the Unit Diary was made pursuant to, and in accordance with, pertinent service regulations. All were made before charges were preferred, and before the case was referred for trial. It is not suggested that they were made for any purpose not within the legitimate requirements of official reporting. Certainly the reasons for requiring such records vastly transcend any possible prosecution of the accused for a violation of the Uniform Code. See: United States v. Wilson, 4 USCMA 3, 15 CMR 3. We must assume that all entries were made in good faith, and in an honest belief as to their accuracy.

Moreover, there is not a scintilla of evidence from which it may be inferred that the convening authority attempted "actively to promote the prosecution." The use of service record entries to show periods of unauthorized absence is a standard procedure. As for the Unit Diary, it was obtained at the request of the court; but even if it had been initially presented by trial counsel, it too carries no implication that the convening authority had any personal interest in the entries relating to the accused.

**511**

Plainly, the testimony of the convening authority is destitute of any fact from which a reasonable person could infer that he had a personal interest in the case. It shows nothing to constitute him an accuser at the time he convened the court. Accordingly, we overrule the majority opinion of the board of review in United States v. Huff, supra. We hold that the circumstances in this case show the convening authority had no such personalized interest in the case as to constitute him an accuser.

In reaching this conclusion, we are not unmindful of such cases as United States v. Larney, 2 USCMA 563, 10 CMR 61; United States v. Keith, 3 USCMA 579, 13 CMR 135; United States v. Noonan, 4 USCMA 297, 15 CMR 297. In each of those cases, an order issued by the convening authority was the subject of a charge against the accused, and the order was duly admitted into evidence. We held the convening authority's relationship to the case to be entirely official, and concluded that he was not an accuser. However, these cases were all decided before United States v. Moore, supra, and the specific issue here was not considered. Hence, they provide no controlling precedent. United States v. Hutchins, 5 USCMA 422, 18 CMR 46.

The convening authority's appearance as a witness against the accused raises a further problem. ▌ Having testified, may he later properly act as the reviewing authority? If he does, would he not then determine the weight of his own testimony. The answer, of course, must be in the affirmative.

The initial reviewing authority may make findings of fact and determine the weight to give to testimony. Article 64, Uniform Code of Military Justice, 50 USC § 651; Manual for Courts-Martial, United States, 1951, paragraph 85c, page 141. Necessarily, if the reviewing authority testified at the trial he would be required to evaluate his own testimony. But, is that fact absolutely disqualifying? Certainly if his testimony relates to an official matter which is on record, and no one disputes the accuracy of the record, there

512

is no real basis for assuming that he has a personal interest in the case. An official act of the kind present here is founded on objective fact. Invariably, the record is made before any litigation to which it may be material ever arises. In fact, it may be doubted that at the time it is made, the recorder contemplates its use in a criminal prosecution against an accused. It would seem, therefore, that when a reviewing authority has appeared as a witness to testify to an official matter or to an objective fact in which he has no personal interest, he should not be disqualified from reviewing the record. Since he did not participate as a partisan, it can hardly be said that he would seek to sustain the conviction as an "accolade for his efforts." United States v. Coulter, 3 USCMA 657, 14 CMR 75.

No statute or regulation prohibits a review by a reviewing authority who has been a witness against the accused. An early case reported in the 1912 Digest of Opinions of The Judge Advocates General of the Army implies that he may act. It is there noted that, "It is not an objection to the competency of a witness that he is the officer upon whom will devolve the duty of reviewing authority when the proceedings are terminated." Ibid, A 3, page 524. Cf. Manual for Courts-Martial, United States, 1951, paragraph 62f(13), page 92. In the absence of statutory disqualification, challenge to the competency of the reviewing authority must be based upon the general principles which preserve the integrity of the review.

In United States v. Gordon, supra, at page 262, we said:

". . . the right to an impartial review is an important right which must be recognized in the military judicial system and an accused is entitled to have the record reviewed and the limits of his sentence fixed by one who is free from any connection with the controversy."

Standing alone, the quotation might support a contention that a connection as tenuous as that of testifying to an official fact is sufficient to disqualify.

However, the quotation must be read in the context of the whole opinion. Throughout, we stressed a fundamental difference between official action and personal interest. We believe that the test of objective reasonableness, which was set out in that case as the standard by which to judge the disqualification of the convening authority, may be equally applied to the reviewing authority who has appeared as a witness against the accused. If from his testimony, it appears that he has a personal connection with the case, he may not act as reviewing authority. On the other hand, if his testimony is of an official or disinterested nature only, he may properly review the record. Here, as in the accuser situation, there may be cases in which the facts incontrovertibly place the reviewing authority at one or the other of the extremes. In other cases, however, the facts may not so clearly define his position. A case in the twilight zone will not be easy to decide. See: United States v. Bergin [ACM 4374], 7 CMR 501. If there is doubt, it should be resolved in favor of the accused. See: United States v. Flood, 2 USCMA 114, 6 CMR 114.

With these principles in mind, we turn to the facts here. The accused presented evidence to dispute the accuracy of the service record entries and those in the Unit Diary. Other prosecution testimony lessens the effect of this defense evidence, but the strength of the prosecution's case obviously turns on the reliability of the service record and Diary entries. The conflict in the evidence was decided by the court against the accused. The reviewing authority, however, has the power to re-evaluate the evidence and to reach a different conclusion. To do so in this case, the reviewing authority would have to question the validity of his own official act. Faced with this choice, his evaluation of the evidence could hardly be free from personal interest. He could not, therefore, exercise the degree of impartiality required for a proper review. We must, therefore, set aside the action taken by him.

An error which prejudices a substantial right of the accused on the post-trial review does not require, as a matter of law, that the conviction be set aside. The error may be effectively cured at the level of the proceeding at which it occurred. See: United States v. Clisson, 5 USCMA 277, 17 CMR 277; United States v. Hightower, 5 USCMA 385, 18 CMR 9. Accordingly, we return the case to the reviewing authority for proceedings consistent with this opinion. See: Article 60, Uniform Code of Military Justice, 50 USC § 647.

Judge LATIMER concurs.

BROSMAN, Judge (concurring):

I concur fully with my brothers here.

Although unargued before us, we have not overlooked in our consideration of this case the law of a related civilian area—that having to do with testimonial incapacity because of connection with the tribunal, and involving the competence of jurors, counsel and the judge as witnesses.

However, both because of a certain amount of conflict in that field, and of dissimilarity between the problems found in it and the distinctly military one before us here, I agree that no good purpose would be served by a detailed treatment of these civilian authorities in the present opinion. However, I have been able to discover nothing in them which demands a result different from the one we have reached.