UNITED STATES, Appellee,

v.

**Allen V. LAWSON, First Lieutenant U.S. Marine Corps, Appellant.**

No. 67,577.
NMCM 89–3394.

U.S. Court of Military Appeals.

Argued Nov. 3, 1992.

Decided April 19, 1993.

For Appellant: *Lieutenant Matthew L. Kronisch, JAGC, USNR* (argued); *Lieutenant Nanette M. DeRenzi, JAGC, USN.*

For Appellee: *Major Laura L. Scudder, USMC* (argued); *Colonel T.G. Hess, USMC* and *Commander W.F. Shields, JAGC, USN* (on brief).

*Opinion of the Court.*

SULLIVAN, Chief Judge:

Appellant, a Marine officer, was tried on various dates in January and February 1989 by a general court-martial with members at Camp Lejeune, North Carolina. Contrary to his pleas, he was convicted of conduct unbecoming an officer by driving while intoxicated, driving with a revoked driver's license, being drunk, and having an open container of liquor in the vehicle he was driving; failure to obey a lawful order; and dereliction of duty, in violation of Articles 133, 92(2), and 92(3), Uniform Code of Military Justice, 10 USC §§ 933, 892(2), and 892(3), respectively. Appellant was sentenced to dismissal from the United States Marine Corps, confinement for 4 months, and total forfeitures. On July 11, 1989, the convening authority approved only as much of the sentence as provided for dismissal, confinement for 49 days, and total forfeitures. On October 31, 1991, the Court of Military Review affirmed the findings and sentence. 33 MJ 946.

This Court granted review of the following issue:

WHETHER IN THE ABSENCE OF GROSS NEGLIGENCE, A MILITARY LINE OFFICER SHOULD BE HELD CRIMINALLY LIABLE FOR THE EXERCISE OF PROFESSIONAL JUDGMENT IN THE PERFORMANCE OF HIS DUTIES.

We hold that the military judge properly instructed the members in this case that simple negligence is the proper standard for determining whether the nonperformance of military duty is derelict within the meaning of Article 92(3). *United States v. Powell*, 32 MJ 117 (CMA 1991); *United States v. Grow*, 3 USCMA 77, 86–87, 11 CMR 77, 86–87 (1953). Furthermore, we find no legal error in the members' findings that First Lieutenant Lawson was derelict in the performance of his duty to post road guides in pairs at designated checkpoints and to obtain a roster of individuals to be posted. *See generally United States v. Dellarosa*, 30 MJ 255 (CMA 1990).

The opinion by the court below sets forth a detailed exposition of the facts concerning the granted issue. 33 MJ at 953–57. In substance, that court found that, during a field training exercise, appellant was assigned the "duties of (1) posting road guards in pairs along a route designated for a battalion-sized motorized night movement, (2) obtaining a roster of Marines posted as road guards, and (3) providing the roster to Captain Edwards, the appellant's superior coordinator for this movement." The battalion commander "had stressed personnel accountability at all times be-

cause of harsh desert conditions and the number of key new people in the battalion."

It was determined that "appellant had some discretion in posting guides in that he could add road guides, but they all had to be posted in pairs and on the movement route." Specifically, on August 30, 1988, "appellant was detailed to reconnoiter the route of advance and to post road guides at four predetermined checkpoints at major road intersections. He was to post two guides at each location, a buddy system." Captain Edwards "tasked appellant" to obtain a roster of the posted individuals and give it to him before leaving "to post the road guides." It was further found that "[a]ppellant understood these leadership obligations but did not discharge them."

During the pre-mission briefing, the battalion commander "initially said road guides could be ... posted" individually. However, by the time the briefing was over "it was clear ... that guides were to be posted in pairs and not separated. This was consistent with ... battalion policy and, at the moment, driven by darkness and desert safety concerns. Specific and detailed instructions for road guide posting and recovery operations were not given to Captain Edwards or appellant by the battalion commander." 33 MJ at 953. Nevertheless, the battalion commander's "order in regard to the conduct of the movement and his guidance on posting road guides were" found to be "adequate in detail to fix the main obligations and establish responsibilities for execution."

After "inadequate" preparation and planning, "[a]ppellant left to post the road guides." His detail was "two Marines short of the requisite manpower," and appellant did not make "a list of road guides and their posts. Appellant did not provide any guide list to Captain Edwards." 33 MJ at 954. When appellant attempted to reach Checkpoint 1, he was uncertain and con-fused as to its true location. Appellant first posted Lance Corporals Key and Roth-er at a point he originally believed was Checkpoint 1. Doubting his action, appellant picked up Key and proceeded "to the real Checkpoint 1." There he posted Lance Corporal Key. He left Lance Corporal Rother where he had originally posted him. Prior to departing the vicinity of Checkpoint 1, appellant was aware "that Lance Corporal Rother was not posted at the correct checkpoint"; appellant "left" him "at a rock about 200 yards off the main road and some 400 yards from the designated Checkpoint 1." The Court of Military Review found "that mission performance and speed of movement were the paramount concerns to" appellant, "despite the safety emphasis in the battalion."

The record shows that "[a]ppellant did not record Lance Corporal Rother's name or his location when he posted him at the rock. He ignored warnings about posting in pairs given by Lance Corporals Adamson and Key, reminding them that he was the senior." 33 MJ at 955. The court below found that "[a]ppellant was not concerned that the guides might be afraid or in danger." Appellant testified at trial and maintained on appeal that tactical considerations influenced him to post Lance Corporal Rother alone and at a distance of some 400 yards from Checkpoint 1. He completed his assigned mission between 10:00 and 11:00 p.m., and "[t]he battalion began its tactical movement at" 11:00 p.m.

At 5:30 p.m., September 1, 1988, over 40 hours after posting the road guides, "appellant revealed Lance Corporal Rother's split posting at Checkpoint 1 when Captain Henderson, Lance Corporal Rother's company commander, confronted appellant about the missing Rother." Lance Corporal Rother was not picked up during recovery operations and was "found dead" (33 MJ at 957) from exposure in the desert in early December 1988.

----

The charges against appellant stemming from this incident were dereliction of duty in "negligently, or by culpable inefficiency," failing to post Lance Corporals Key and Rother as a pair; failing to post Lance Corporal Rother along the main route; and failing to "obtain a roster of the individuals to be posted." Art. 92(3). Additionally, he was charged with willfully disobeying Captain Edwards' order to provide him with a roster. Art. 90, UCMJ, 10 USC § 890. Regarding this second charge, the members found appellant guilty of the lesser included offense of failing to obey a lawful order that appellant knew existed. Art. 92(2). However, he was not charged with or found guilty of killing Lance Corporal Rother. *Cf. United States v. Kick,* 7 MJ 82 (CMA 1979) (homicide through simple negligence as offense under Article 134, UCMJ, 10 USC § 934).

Appellant challenges his conviction of dereliction of duty on the basis that the military judge erroneously instructed the members on the appropriate legal standard which they must use in determining the criminality of his conduct under Article 92(3). He observes that the military judge instructed[1] the members on nonperformance of duty in terms of simple negligence. Final Brief at 15. He contends that this standard "is not an appropriate standard against which to judge the actions of professional officers faced with difficult, tactical decisions while in the performance of their duties." Final Brief at 16. Finally, he concludes by asserting that "gross negligence" is the appropriate standard for measuring the criminality of his nonperformance of duty on the night in question. Final Brief at 20.

Appellant supports his conclusion with a multi-step analysis. First, in his oral argument before this Court and his supplemental filing, he suggests that Congress in enacting Article 92(3) adopted precodal legal authorities providing for two standards of negligence in dereliction-of-duty cases, *i.e.,* simple negligence and culpable inefficiency (gross negligence). Second, in his final brief, he asserts that it is basically unfair to apply the simple-negligence standard in reviewing tactical decisions of military line officers under Article 92(3) because of the higher standard of review required in other military professional judgment cases and in civilian criminal negligence cases. Alternatively, he contends that our case law also indicates a simple-negligence standard should be used only in cases involving the nonperformance of uncomplicated military duties. Thus, it should not be used in a nonperformance case like his which purportedly involves more sophisticated tactical decisions.

*Legislation and Case Law*

Article 92 of the Code states:

**§ 892. Art. 92. Failure to obey order or regulation**

Any person subject to this chapter who—

---

1. We note that the military judge did instruct the members on malperformance of duty in terms of gross negligence, as follows:

MJ: A duty may be imposed by regulation, a lawful order, or a custom of the service. *A person is derelict in the performance of those duties when he negligently fails to perform them or when he performs them in culpably inefficient manner.*

Dereliction is defined then as a failure—

PRES: Could you hold up just a second please?

MJ: Dereliction is defined as a failure in duty, a short coming, or delinquency.

Now negligence is an act—negligence is an act or a failure to act by a person under a duty to use due care which demonstrates a lack of care which a reasonably prudent person would have used under the same or similar circumstances.

In testing for negligence, the law does not substitute hindsight for foresight.

The standard to be applied is whether the conduct of the individual was adequate and proper in light of the circumstances prevailing at the time.

*Now the words "culpably inefficient" mean inefficiency for which there is no reasonable or just excuse. It means a reckless, gross, or deliberate disregard for the foreseeable results of a particular act or failure to act.*

(Emphasis added.)

(1) violates or fails to obey any lawful general order or regulation;

(2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or

(3) is *derelict in the performance of his duties;*

shall be punished as a court-martial may direct.

(Emphasis added.)

█ A person commits the offense of dereliction of duty, in violation of Article 92(3), either by "willfully or negligently fail[ing] to perform" his duties or by performing such duties "in a culpably inefficient manner." *United States v. Powell,* 32 MJ at 120. *See* para. 16c(3)(c), Part IV, Manual for Courts–Martial, United States, 1984. This Court has suggested that there "need not be" a "significant" distinction between negligence associated with the "nonperformance of a duty" and "[c]ulpable inefficiency" associated with "faulty performance." *See United States v. Dellarosa,* 30 MJ at 259. We have noted that the "negligence terminology" has long been applied in dereliction-of-duty cases in which the charge was malperformance of a duty. *Id.* at 259. *See United States v. Kelchner,* 16 USCMA 27, 28–29, 36 CMR 183, 184–85 (1966).[2]

█ In any event, for the purposes of nonperformance of duty, the Manual for Courts–Martial explains "negligently" as "an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." Para. 16c(3)(c). This is consistent with the repeated holdings of our

Court that the standard of "negligence" for dereliction of duty is "simple negligence." *See United States v. Powell, supra* at 120; *United States v. Dellarosa, supra* at 259 (recognizes "reasonable-man standard in determining negligence for purposes of Article 92(3)"); *United States v. Kelchner, supra* at 29, 36 CMR at 185 ("negligently" suggests "the failure to act as a reasonable, prudent person in like circumstances"); *United States v. Grow, supra* at 86–87, 11 CMR at 86–87 (negligence is the "lack of ordinary care").

## I

The premise of appellant's argument is that Article 92(3) incorporates two standards of negligence for determining whether performance-of-duty conduct is criminal. Relying on the Manual for Courts–Martial, he asserts that our prior case law wrongly suggests that Congress in enacting this codal provision adopted a single standard of negligence in duty-performance cases. *See* para. 171c, Manual for Courts–Martial, United States, 1951. *Cf. United States v. Dellarosa, supra* at 259. He also calls our attention to various authorities which suggest that two standards of negligence existed for determining criminal liability in precodal Naval duty cases. *E.g.,* §§ 66–67 and 105, Naval Courts and Boards (hereafter NC&B) at 41–42, 97 (1937); *cf.* W. Winthrop, *Military Law and Precedents* 573 (2d ed. 1920 Reprint).

█ The legislative history of Article 92(3) indeed indicates that the offense of dereliction of duty is partially derived from naval law. *See Hearings on H.2498 Before a Subcomm. of the House Armed Services Comm.,* 81st Cong., 1st Sess. 1226–27 (1949);[3] *see generally* J. Snedeker,

---

**2.** Appellant is correct in characterizing as dicta our discussion on "culpable inefficiency" in *United States v. Dellarosa,* 30 MJ 255, 259 (CMA 1990). In that case we only suggested that culpable inefficiency need not be alleged and proven in a malperformance case to secure a lawful conviction for dereliction of duty under Article 92(3), Uniform Code of Military Justice, 10 USC § 892(3). We did not intend to suggest, however, that, if "culpable inefficiency" was alleged, it

should be necessarily equated to simple negligence. *See United States v. Kelchner,* 16 USCMA 27, 36 CMR 183 (1966).

**3.** Art. 92. Failure to obey order or regulation. Any person subject to this code who—
(1) violates or fails to obey any lawful general order or regulation; or
(2) having knowledge of any other lawful order issued by a member of the armed

*Military Justice Under the Uniform Code* (hereafter Snedeker) 616 (1953); *Legal and Legislative Basis, Manual for Courts–Martial, United States, 1951*, 258 (1951) (the *specified* offense of dereliction of duty was "new to the Army and Air Force"). Specifically, it shows that Article 92(3) has some origin in Article 9(19) of the *proposed revision* to the Articles for the Government of the Navy (AGN).[4] *See* S. 1338, 80th Cong., 1st Sess. (1947). This proposed provision is substantially similar to Article 8(9) of the Articles for the Government of the Navy, and both prescribe punishment for naval personnel who are "culpably inefficient in the performance of duty."[5] Accordingly, we agree that dereliction of duty under Article 92(3) was intended by Congress to include culpable inefficiency in the performance of duty.

Prior to enactment of the Code, the Navy apparently required "gross and culpable negligence" to support criminal liability for certain crimes. However, this high degree of negligence was required only for crimes in which it served as a substitute for a requisite specific intent. § 153, NC&B at

133. Proof of such an intent was required only when "a distinct and specific intent, independent of the mere act, [wa]s essential to constitute the offense, as murder [with malice aforethought], larceny, burglary, desertion, and mutiny, etc.[.]" § 151, NC&B at 132. In cases where "the act [wa]s the principal feature, the existence of the wrongful intent being simply inferable therefrom, as rape, sleeping on watch, drunkenness, *neglect of duty*, etc. ... it [wa]s only necessary to prove the unlawful act." *Id.* (emphasis added). Therefore, it appears that precodal naval law prohibited simple negligence in the nonperformance of duty and gross negligence in the malperformance of duty. Art. 22(a), AGN and § 105, NC&B.[6]

General Snedeker, in his early work on the Uniform Code of Military Justice, has contrarily suggested that the higher standard of gross and culpable negligence was required for both negligent nonperformance and culpably inefficient performance of duty under prior naval law. Snedeker, *supra* at 616, 621–22. He also asserted that Congress intended to adopt this higher

---

forces, which it is his duty to obey, fails to obey the same; or
(3) is derelict in the performance of his duties;
shall be punished as a court-martial may direct. *References*—A.W. 96; proposed A.G.N., articles 9(30), 9(19).
*Commentary.*—*This article is derived from proposed A.G.N. 9(30) and 9(19). Under present Army practice a violation of this provision would be charged under A.W. 96.*
(Emphasis added.)

4. Proposed Article 9(19), AGN, states:
Such punishment other than death as a court-martial may adjudge may be inflicted upon any person subject to the Articles for the Government of the Navy—
\* \* \*
[who] is negligent or careless in obeying orders or culpably inefficient in the performance of duty[.]

5. **Article 8. Persons to whom applicable.**
Such punishment as a court martial may adjudge may be inflicted on any person in the Navy—
\* \* \*
**Ninth (Neglect of orders).**—[Who] is negligent or careless in obeying orders, or culpably inefficient in the performance of duty[.]

6. **"Article 22(a) Offenses Not Specified.** All offenses committed by persons belonging to the Navy which are not specified in the foregoing articles shall be punished as a court-martial may direct...."

§ 105. Naval Courts and Board (1937) states:
**Neglect of duty.**—This is provided for under the 22nd A.G.N. Charge: Neglect of duty.
**Elements:** This offense is distinguished from the offense of culpable inefficiency in the performance of duty, in that it is a failure to do, whereas the other is not a failure to do at all, but a doing in such a manner as to be blameworthy. A person may neglect his duty by never entering upon it, in whole or in part. It is an omission rather than an act. A duty may be imposed by a law, regulation, order, or custom of the service in force at the time of the commission of the offense.
The facts constituting the neglect must be set forth with precision and certainty.
**Lesser included offense:** Conduct to the prejudice of good order and discipline.

standard of negligence in Article 92(3). Snedeker, *supra* at 616. Nevertheless, we note that Congress in enacting Article 92(3) did not use the culpable-inefficiency language found in the earlier naval statutes. Thus, the more reasonable interpretation of this new codal provision is that Congress rejected an exclusive culpable-negligence standard and intended, instead, to punish both types of negligent-duty conduct under Article 92(3).

The new legislative term "derelict" [7] was broad enough to include both degrees of negligence and incorporate Navy practice with Army and Air Force practice. Prior to enactment of the Uniform Code of Military Justice in 1950, the Army and Air Force also punished neglect of duty under the general article, Article of War 96. Para. 183a, Manual for Courts–Martial, U.S. Army, 1949 at 255. The Army interpreted the word "neglect" in the general article as simply an omission of conduct. *See generally* Snedeker, *supra* at 616. This practice is also referred to in the legislative history with a comment that it was now punishable under the new Article 92(3). Accordingly, it is our conclusion, at the very least, that Congress intended to establish a simple-negligence standard for nonperformance-of-duty derelicts charged under this statute.[8]

## II

Challenging this conclusion in part, appellant contends that certain cited legal authorities dictate that the gross and culpable standard of negligence should be used to determine whether a military line officer is derelict in the performance of his duty. Appellant asserts that professional military officers, like other professionals faced with difficult tactical judgments, should not be held to the reasonable-person standard. *E.g., United States v. Billig*, 26 MJ 744, 752 n.10 (NMCMR 1988) (en banc). Relying primarily [9] on cases dealing with ineffective assistance of counsel, appellant asks this Court to require a standard of gross and culpable negligence in assessing his criminality at least with respect to nonperformance of duties involving "strategic professional choices." Final Brief at 17. *E.g., United States v. Stephenson*, 33 MJ 79, 82 (CMA 1991).

More particularly, appellant urges this Court to compare the military line officer's performance of professional duties with the functions of legal counsel during the conduct of a trial. The basis for this comparison is his assertion that both the military line officer and the trial attorney are required to make certain tactical decisions throughout the course of performing their respective duties. All such decisions he asserts should be presumed competent and not faulted unless they constitute "gross negligence." Final Brief at 20.

We initially note that appellant's so-called "professional judgment" cases were

---

**7.** Webster's New Collegiate Dictionary (1949) states:

> **derelict** ..., *adj.* [L. derelictus, past part. of *derelinquere* to abandon, fr. de- + *relinquere* to leave.] **1.** Given up by the owner; abandoned. **2.** *Chiefly* U.S. Unfaithful; neglectful. - *n.* **1.** A vessel abandoned on the high seas and constituting a menace to navigation. **2.** *Law.* a A thing voluntarily abandoned. **b** A tract of land left dry by water receding from its former bed. **3.** A person abandoned, or outside the pale of respectable society; a "human wreck." **4.** *U.S.* One guilty of neglect of duty. **dereliction** ..., *n.* **1.** Abandonment; an utter forsaking. **2.** State of being abandoned. **3.** A failure in duty; shortcoming. **4.** *Law.* A retiring of a body of water, so that land above high-water mark is gained.

**8.** Our conclusion in this regard is not inconsistent with dicta in *United States v. Dellarosa*, 30 MJ at 259, suggesting that simple negligence is the proper standard in both nonperformance and malperformance cases. However, this question need not be decided in this case. *See* n. 2, *supra.*

**9.** He also relies on civilian case law. In this regard, we note the concerns expressed in *United States v. Kick*, 7 MJ 82 (CMA 1979). We further note the servicemember's inability to maintain tort suits against the Government for injuries arising out of their military service. *See Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

not themselves criminal proceedings against military lawyers for dereliction of duty. They were appeals of criminal trials where questions were raised by an accused concerning the effectiveness of his legal representation. "[T]he purpose of the effective assistance [of counsel] guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In contrast, appellant was criminally prosecuted for dereliction of duty, in violation of a punitive article specifically intended by Congress to ensure the proper performance of duty within the military service. *See generally Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974) ("The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it."). Accordingly, the context and purpose of the review of the professional conduct in appellant's cited cases is substantially different.

■ We also note that the punitive article of dereliction of duty holds a servicemember accountable for the nonperformance or faulty performance of duty regardless of its demonstrated effect on a particular military mission. *Compare United States v. Nickels*, 20 MJ 225 (CMA 1985) (conviction for dereliction of duty sustained although conduct did not result in permanent loss to Government), *with United States v. Scott*, 24 MJ 186 (CMA 1987) (ineffective-assistance claim sustained only if counsel's performance deprived defendant of a fair trial). Furthermore, defense counsel have a "constitutionally protected independence ... in making tactical decisions" which the military line officer simply does not possess. *See Strickland v. Washington, supra* at 689, 104 S.Ct. at 2065. In light of all the above, we are not convinced that appellant's cited cases require that we apply a standard of gross and culpable

negligence in criminal prosecutions of military line officers for nonperformance of tactical duties under Article 92(3).

## III

We now turn to appellant's alternative argument that our dereliction-of-duty cases suggest that a standard of gross and culpable negligence should be applied in determining the criminality of tactical-nonperformance decisions by military line officers. In so arguing, he focuses on the purported simple tasks considered in our reported dereliction-of-duty cases and contrasts them to the so-called complicated professional judgments at issue in this case. *E.g., United States v. Powell* and *United States v. Dellarosa*, both *supra, see* 36 MJ at 410. He then asserts that use of a reasonable-person standard in assessing "strategic, professional judgment[s] under unforeseen circumstances, ignores the reality of decision-making in today's military." Final Brief at 20.

■ There is no language in Article 92(3) which supports appellant's tactical duty-based distinction in dereliction-of-duty cases. Moreover, from the very beginning, we have consistently applied a simple-negligence standard in judging nonperformance of military duties regardless of the nature of the duty or the status of the person required to perform it. *See United States v. Powell, United States v. Dellarosa*, and *United States v. Grow*, all *supra, see* 36 MJ at 410. However, we have also held that the factfinder must consider the nature and complexity of the duty as part of all the circumstances of the case when applying this simple-negligence standard. *Id.* Thus, appellant goes too far in attacking the simple-negligence standard; and, in any event, Congress, not this Court, is the proper authority for establishing a more liberal standard for officer conduct. *See United States v. Graf*, 35 MJ 450, 454 (CMA 1992).

■ On the issue of negligence, we note that appellant had a certain duty to post Lance Corporals Key and Rother as a pair; to post Lance Corporal Rother on the main

route; and to obtain a list of all the posted road guides. Appellant's own testimony demonstrated his knowledge and understanding of these relatively straight forward duties and his failure to perform them. On the other hand, the members heard defense testimony regarding the particularly stressful and fast-moving conditions that existed during execution of the exercise. Finally, evidence of the battalion commander's emphasis on safety and accountability during the exercise was also presented. Based on all this evidence, it was the judgment of his fellow officers that he was derelict in his duties, and we find no legal error in that determination. *See generally United States v. Hart*, 25 MJ 143 (CMA 1987), *cert. denied*, 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, and GIERKE concur.

WISS, Judge (concurring in the result):

For the reasons stated below, I agree with the majority that the legal standard against which appellant's performance properly was to be measured to determine criminal liability for alleged negligent dereliction of duty was a reasonable-person, simple-negligence standard. While that standard is simply stated, however, it frequently is not so simply applied—especially where the nature of the duties involve a sphere of discretion and judgment, as well as training and expertise, in their performance.

I

Article 92(3), Uniform Code of Military Justice, 10 USC § 892(3), curtly provides that "[a]ny person subject to this chapter who ... is derelict in the performance of his duties ... shall be punished as a court-martial may direct." This Court long and consistently has held that, under a charge of negligent dereliction of duty, the negligence in issue is simple negligence. *E.g.*, *United States v. Dellarosa*, 30 MJ 255, 259 (CMA 1990); *United States v. Kelchner*, 16 USCMA 27, 29, 36 CMR 183, 185 (1966); *United States v. Grow*, 3 USCMA 77, 86–87, 11 CMR 77, 86–87 (1953). Moreover, the President, through the Manual for Courts–Martial, has consistently reflected the same view of this crime. *E.g.*, para. 16c(3)(c), Part IV, Manual for Courts–Martial, United States, 1984 ("'Negligently' means an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances."); para. 171*c*, Manual for Courts–Martial, United States, 1969 (Revised edition) ("When the nonperformance is the result of a lack of ordinary care, the omission is negligent."); para. 171*c*, Manual for Courts–Martial, United States, 1951 ("When the nonperformance is the result of a lack of ordinary care, the omission is negligent.").

At no time of which I am aware has anyone suggested to Congress that this Court's interpretation of Article 92(3) over the last 4 decades is incorrect. Most surely, Congress has never indicated as much. Under these circumstances, appellant's plea to this Court—that the degree of negligence *should* be *gross* negligence when the dereliction involves discretion and judgment by a line officer in a tactical situation—is misdirected. *See generally* 2B *Sutherland Stat Const* § 49.09 at 68–70 (5th ed 1992).

II

That said, it must be acknowledged that application of this standard (or any other standard, for that matter) to the facts of a particular case may be exceedingly difficult. The "circumstances" under which "a reasonably prudent person" finds himself may, in a given case, include any number of factors that greatly complicate any subsequent decision whether "due care" was used. *See* para. 16c(3)(c), 1984 Manual, *supra*.

Among the considerations that may confront factfinders in this regard are the complexity of the task; the amount of judgment and discretion that typically is involved in its performance; the level of special training, education, and unique expertise needed to perform the task compared to the special training, education, and unique expertise possessed by the accused; and any unusual circumstances that may have surrounded the particular incident in question (here, for instance: stress; conflicting concerns for speed and mission accomplishment versus safety; omissions of *others* that may reflect some disarray which arguably supports the claim that the accused under the circumstances acted prudently, even if by hindsight incorrectly; etc.).

This case vividly illustrates the difficulty of the responsibility that may face factfinders where someone is accused of being negligent in the performance of duties. The opinion of the Court of Military Review comprehensively details the events as they unfolded [33 MJ 946, 953–57 (1991)] and starkly reveals that, in many such cases, the exercise of due care may not unambiguously point to a particular act or course of action. While the standard for determining criminal liability for negligent dereliction is simple negligence, it is incumbent on factfinders to consider, in reaching their conclusion, all the possible myriad of factors that argue for or against negligence. The question is not whether the act or omission ultimately had adverse consequences but, rather, is whether the act or omission reflected "that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances."

Here, as the majority points out, the evidence was fully laid out for the members, and the military judge fully and correctly instructed on the legal standard against which appellant's actions were to be measured. Thereafter, the court of officers concluded that appellant's performance did not satisfy that standard, and the evidence is sufficient as a matter of law to sustain that conclusion. Accordingly, I join the majority in affirming the decision below.