UNITED STATES, Appellee

v.

Pamela D. FISHER, Boatswain's Mate
First Class, U.S. Navy, Appellant.

No. 95–0918.
Crim.App. No. 94 0497.

U.S. Court of Appeals for
the Armed Forces.

Argued May 22, 1996.

Decided Sept. 27, 1996.

For Appellant: *Commander Mary T. Hall,*
JAGC, USN (argued); *Lieutenant Syed N.
Ahmad,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Jonathan W.
Haray,* JAGC, USNR (argued); *Colonel
Charles W. Dorman,* USMC and *Command-
er D.H. Myers,* JAGC, USN (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

Appellant unconditionally pleaded guilty at
her special court-martial to a single specifica-
tion of wrongful use of cocaine, in violation of
Article 112a, Uniform Code of Military Jus-
tice, 10 USC § 912a. After a full and ade-
quate providence inquiry, the military judge
accepted her pleas, convicted her, and sen-
tenced her to a bad-conduct discharge and
reduction in grade to E–3. The convening
authority approved these results, and the
Court of Criminal Appeals affirmed them in
an unpublished opinion.

Thereafter, appellant petitioned this Court
for further review, which we granted on the
following issue:

WHETHER THE NAVY–MARINE
CORPS COURT OF CRIMINAL AP-
PEALS ERRED IN FINDING THAT
CAPTAIN MAJOR HAD NOT DIS-
QUALIFIED HIMSELF FROM CON-

TINUED SERVICE AS THE CONVENING AUTHORITY AFTER HE CHALLENGED, IN VIOLATION OF UCMJ ARTICLE 37(a)'S PROHIBITION AGAINST CENSURE, REPRIMAND, OR ADMONISHMENT OF COUNSEL, THE TRIAL DEFENSE COUNSEL'S ETHICS FOR RAISING A MOTION TO SUPPRESS THE RESULTS OF A URINALYSIS TEST.

Now, after a full hearing of the parties and consideration of this question, we agree with appellant that the court below did err and that a new action by a different convening authority is necessary.

I

Prior to entering her pleas, appellant's counsel moved to suppress the results of her urinalysis, which was the core of the Government's case against her. The defense did not quarrel with the lawfulness of the command's original order to appellant on July 19, 1993, to provide a urine sample. It argued, however, that the subsequent order on the following day to produce another sample was based only on the command's suspicion that she had tampered with her earlier one; as such, it was a subterfuge search, not an inspection, and was done without probable cause. *See United States v. Bickel*, 30 MJ 277 (CMA 1990).

During the hearing on this motion, Captain Major, USN, the convening authority in this court-martial, testified for the prosecution. After his direct examination but before cross-examination, the military judge called a recess. In a post-trial affidavit submitted for the first time to the Court of Criminal Appeals, defense counsel describes what happened during that 13-minute pause in the trial:

During a break in the proceedings on the motion, Captain Major, Commanding Officer of the NAS Alameda at the time and the convening authority in this case, told me that any lawyer that would try to get the results of the urinalysis suppressed was unethical. As I was the only lawyer in the room at the time, I concluded that he was clearly referring to me.

When the proceedings resumed, defense counsel cross-examined Captain Major—from all appearances, aggressively and effectively. From the record, however, we see that he did not disclose to the military judge Captain Major's recess comment or make any reference to it during his cross-examination of Captain Major.

Ultimately, the military judge denied the motion, and appellant entered her unconditional guilty pleas. In his affidavit, defense counsel explains this decision:

Upon losing the motion, BM1 Fisher entered a guilty plea to the charge and single specification. Although I attempted to negotiate a pretrial agreement (asking only for a cap of 60 days confinement as insurance, though I believed the awarded confinement would be closer to 30 days), I was informed the convening authority refused to "deal" because of the fact that BM1 Fisher had been acquitted months earlier at a previous court-martial for an earlier positive urinalysis.

Based on the convening authority's refusal to enter into a pretrial agreement and because of his comments during the suppression motion, I concluded that the convening authority would not consent to a conditional plea.

The morning after the trial, I was informed that the convening authority was very disappointed that BM1 Fisher had not received confinement.

Inexplicably, as earlier implied, defense counsel said nothing about this matter even prior to Captain Major's taking his final action on the case as the convening authority. Instead, as we have said, it came to light for the first time in his affidavit submitted to the lower appellate court. That court held that appellant's unconditional and provident guilty pleas waived her complaint as to the lawfulness of obtaining the second urine sample and, further, that "the convening authority's purported comment to the trial defense counsel during a recess" did not violate Article 37, UCMJ, 10 USC § 837. On this latter point, the court wrote:

This encounter is not "enough evidence to show an *appearance* of unlawful command

influence affecting the case to raise the issue and trigger the rebuttable presumption" regarding unlawful command influence. *United States v. Lawson*, 33 MJ 946, 951 (NMCMR 1991), *aff'd*, 36 MJ 415 (CMA 1993).

Unpub. op. at 3. Finally, the Court of Criminal Appeals held that "[a]ny accuser or disqualification issue that might be perceived is waived. *United States v. Hamilton*, 41 MJ 32 (CMA 1994); *United States v. Shiner*, 40 MJ 155 (CMA 1994)." Unpub. op. at 2, 3.

## II

As the granted issue makes clear, this Court agreed to consider appellant's claim that Captain Major's comment to defense counsel violated Article 37 and that, by virtue of this violation, he disqualified himself from any further service as the convening authority in the case. The logical relief from this wrong, if meritorious, would seem to be limited to a new post-trial action by a different convening authority.

In her brief and in oral argument in this Court, however, appellant extends her grievance all the way back to the point where Captain Major made his offending remark. Thereupon, while asking for the new action just mentioned, she also advances two other contentions, each with a proposed remedy. First, on some rationale that is not at once apparent to us, she makes the naked request that we "set aside the findings and sentence, on the premise that the convening authority disqualified himself during his conversation with trial defense counsel." Final Brief at 8.

Second, she urges that she should have had the benefit of an objective convening authority to approach for consent to her entering a conditional guilty plea, which would have preserved appellate review of her suppression motion. *See* RCM 910(a)(2), Manual for Courts–Martial, United States (1995 ed.). She points out that trial defense counsel declined to seek the convening authority's consent, in part, because Captain Major already had shown his bias against the defense. As relief, she asks us to direct the Court of Criminal Appeals to consider the

merits of the suppression motion as though she had entered her pleas conditionally.

Although these latter two arguments might seem to be outside the scope of the granted issue, we will pause briefly to address each one. As to the first, the requested relief is a *non sequitur*. With the single exception that we will address presently, there simply is no connection under the circumstances of this case between Captain Major's arguably instantaneous mid-trial disqualification from continued service as the convening authority, on the one hand, and the integrity of the proceedings and viability of the resultant findings and sentence, on the other. The comment concerning the motion to suppress does not demonstrate that—even when he appointed the court-martial and referred the charges—Captain Major had a frame of mind that made it improper for him to appoint the court-martial and refer the charges to it for trial.

The second argument also is unsuccessful for appellant. RCM 910(a)(2) permits an accused to enter a conditional guilty plea "[w]ith the approval of the military judge and the *consent of the Government*." (Emphasis added.) This Court never has been asked to decide whether "Government" in this context refers to trial counsel, who is the Government's courtroom advocate and in that capacity can and does bind the Government in a variety of ways during the trial; or whether it refers to the convening authority, who for some purposes—such as deciding whether to enter into a pretrial agreement or grant immunity—is the "Government." Either interpretation would be arguable; so we cannot fault defense counsel's view that he would need the convening authority's approval for a conditional plea here. *See generally United States v. McCastle*, 43 MJ 438 (1996).

The issue, however, is not adequately raised for appellate review in this case. The defense, in fact, did not seek consent from either trial counsel or the convening authority, and it is problematic to speculate what result would have flowed from either or both of these routes. Further, the defense did not ask the military judge for relief from the perceived compromise of appellant's alleged

right to an objective convening authority's decision in this regard.

The nuances and subtleties of this issue seem substantial. Who is the "Government" for these purposes? If it is the convening authority, is this the type of decision (that is, whether the Government will consent to a conditional guilty plea) that an accused has a right to have decided by an objective decisionmaker, rather than someone who may be more adversely partisan? Is there a kinship between a request of a convening authority to enter into a pretrial agreement and a similar request to give consent to a conditional guilty plea—and, if so, how might that relate to this question?

■ Under these circumstances, for us to proceed now to test these unexplored waters is inappropriate. The fact is that appellant entered unconditional pleas—and thereby waived appellate litigation of her suppression motion. Mil.R.Evid. 304(d)(5) and 311(i), Manual, *supra*. Furthermore, nothing that has come to light since trial suggests that her decision to do so resulted from legal advice that reflected either an understanding of the law or a tactical judgment that is so unreasonable as to constitute ineffective representation. *See generally Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, there is no occasion here to upset the findings and the sentence based upon appellant's provident and unconditional pleas of guilty.

■ We are concerned, however, with the demonstrated attitude of Captain Major as it relates to his taking post-trial action on the case. Article 37(a) unambiguously admonishes:

No authority convening a general, special, or summary court-martial nor any commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercises of its or his functions in the conduct of the proceedings.

Captain Major violated this prohibition. His statement during the recess in his testimony reflects a regrettable insensitivity to the adversarial process and the roles of the various participants in that process in ensuring a reliable and fair result. It is particularly painful that this remark was uttered by a senior commander, who was a convening authority of courts-martial. Hopefully, Captain Major's lack of judgment at that time was an aberration—for him or for any other convening authority.

Obviously, we are not confident that Captain Major had the necessary objectivity to perform his post-trial responsibilities and exercise his unique discretion as convening authority under Article 60, UCMJ, 10 USC § 860. *See United States v. Shiner*, 40 MJ 155 (CMA 1994); *United States v. Jeter*, 35 MJ 442 (CMA 1992); *cf. United States v. Nix*, 40 MJ 6 (CMA 1994). Our discomfort is only heightened, not assuaged, by the fact that Captain Major did not follow the military judge's recommendation that he suspend appellant's bad-conduct discharge. While it was his lawful prerogative to decline to follow that recommendation, the very fact that he was required to exercise discretion on such an important question emphasizes the need for a convening authority who will be appropriately open-minded to the competing interests. *See* RCM 1105(b)(4); 1106(d)(3)(B); 1107(b)(1) and (d)(1); and 1108(b).

The Government has tried several tactics to avoid the inevitable remand of this case for a new action by a different convening authority. First, while not forthrightly challenging the veracity of trial defense counsel's sworn affidavit as to the convening authority's statement, appellate government counsel implicitly question the reliability of the affidavit by such phrases in the Government's brief as: "Even assuming LCDR [Lieutenant Commander] Zeller's [trial defense counsel's] affidavit is accurate. . . . ," and "the convening authority's purported statement to trial defense counsel." Government counsel, however, has had ample opportunity to rebut that affidavit, both in the Court of Criminal Appeals and in this Court, and has not done so. For these purposes and under these circumstances, we will presume the accuracy of the

sworn representation of an officer of the court. *Cf. United States v. Nix, supra.*

■ Second, the Government has argued that appellant waived her right to pursue this complaint in the appellate courts by not asserting it before the post-trial action was taken. We already have expressed our puzzlement as to why trial defense counsel did not make Captain Major's statement a matter of record at trial or contest Captain Major's qualifications to take the action via an RCM 1106 submission to the convening authority. We note, however, no evidence or other indication that appellant, herself, was aware of Captain Major's statement and made a knowing and intelligent waiver of her right to contest his qualifications to take the action on her court-martial. Accordingly, we decline to invoke waiver under these circumstances, where that probably would serve only to raise a substantial question as to the effectiveness of counsel's representation at that stage.

### III

The decision of the United States Navy–Marine Corps Court of Criminal Appeals and the post-trial action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to a different convening authority for action under Article 60. Thereafter, Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867, respectively, will apply.

Chief Judge COX and Judge GIERKE concur.

SULLIVAN, Judge (concurring):[1]

A very close thing is Justice. In the court below, this case was affirmed (3–0) in an unpublished opinion. In our Court two votes are needed to grant a petition. When this case came to our Court, initially there was only one vote to grant (3 of the 4 active judges voted to deny hearing this case). Af-

ter further deliberation and right before the denial order was issued, the deliberative process yielded one more vote to grant. This gave appellant the two required votes to grant. So this case came into our courtroom for review by a slim margin. Yet once in the courtroom, appellant has prevailed in obtaining a reversal of the case by a 4–1 vote of the judges.[2] A very close thing is Justice!

CRAWFORD, Judge (dissenting):

The Court concludes that Captain Major did not have the "necessary objectivity to perform his post-trial responsibilities and exercise his unique discretion as a convening authority under Article 60." 45 MJ at 162.

In the referral and post-trial areas, the convening authority is not disqualified unless he or she is an accuser, *see, e.g., United States v. Shiner,* 40 MJ 155 (CMA 1994); *United States v. Byers,* 37 MJ 73 (CMA 1992) (summary disposition), or has a personal interest in the case, *United States v. Nix,* 40 MJ 6 (CMA 1994) (convening authority had a personal grudge because of the defendant's remark to his fiancee). Neither has been established here.

This convening authority would not be disqualified under the even stricter neutral and detached magistrate rules applied to commanders in authorized searches. *See, e.g., United States v. Freeman,* 42 MJ 239, 240, 242 (1995).

The majority also holds that Captain Major's comments constituted a violation of Article 37(a), Uniform Code of Military Justice, 10 USC § 837(a). 45 MJ at 162. In establishing a violation of Article 37(a), as this Court has repeatedly said, first, appellant must establish that the remarks showed a lack of objectivity and were not just an unfortunate choice of words, and second, that they had an impact on the proceedings. *United States v. Ayala,* 43 MJ 296, 299–300

---

1. I completely agree with the excellent opinion of my learned Brother, Senior Judge Robinson Everett.

2. Even the lone dissenting vote would now give some relief in this case. As Judge Crawford

notes in her dissent, "I would feel more comfortable if we sent this record back for a *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 *(1967),* hearing . . . ." 45 MJ at 164.

(1995), and cases cited therein. Because this issue was not raised below, it has not been fully litigated.

Since the record is not fully developed, I would feel more comfortable if we sent this record back for a *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), hearing to determine (1) why defense counsel did not raise the issue of disqualification of the convening authority; and (2) whether the convening authority was biased against appellant or whether he used an inappropriate and poor choice of words in expressing his frustration with the exclusionary rule.