UNITED STATES, Appellee

v.

Aaron J. GUDMUNDSON, Airman First Class
U.S. Air Force, Appellant

No. 02-0264

Crim. App. No. S29944

---

United States Court of Appeals for the Armed Forces

Argued October 16, 2002

Decided December 19, 2002

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Captain Antony B. Kolenc (argued); Lieutenant
   Colonel Beverly B. Knott, Major Terry L. McElyea, and Major
   Jeffrey A. Vires (on brief).

For Appellee:  Captain C. Taylor Smith (argued); Lieutenant
   Colonel LeEllen Coacher and Lieutenant Colonel Lance B.
   Sigmon (on brief); Captain Adam Oler and Captain Suzanne
   Sumner.

Military Judge:  Israel B. Willner


**This opinion is subject to editorial correction before final publication.**

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas,[1] of wrongful use of lysergic acid diethylamide (LSD), in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2002). The adjudged and approved sentence provides for a bad-conduct discharge, confinement for three months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER THE CONVENING AUTHORITY, WHO TESTIFIED AT THE COURT-MARTIAL PURSUANT TO A DISPOSITIVE SUPPRESSION MOTION, WAS DISQUALIFIED FROM THEREAFTER TAKING R.C.M. 1107[2] ACTION IN THIS CASE.

We hold that any issue regarding the convening authority's disqualification was waived.

### Factual Background

During the early hours of November 18, 2000, the first 100 airmen coming back onto Little Rock Air Force Base, Arkansas, between the hours of 3:00 a.m. and 6:00 a.m., were required to provide a urine sample. Appellant was one of those airmen. His urine sample tested positive for LSD. The issue at trial was

---

[1] Appellant's guilty plea was conditional under the provisions of Rule for Courts-Martial 910(a)(2) [hereinafter R.C.M.], and it allowed him to preserve for appellate review his assertion that the evidence against him was the product of an unlawful search and seizure. Appellant raised the issue before the Court of Criminal Appeals as well as this Court, but this Court did not grant review of the issue.

[2] R.C.M. 1107.

whether the urinalysis results were the product of a valid inspection or an unlawful search. See Military Rule of Evidence 313(b).

At trial, Appellant moved to suppress the urinalysis results and the evidence derived from the urinalysis. In response, the Government presented the testimony of Brigadier General (Brig Gen) Paul Fletcher, the base commander and the convening authority for this case. Brig Gen Fletcher had given the order to execute the plan, dubbed Operation Nighthawk, for collecting urine samples from airmen returning to the base.

Trial counsel asked Brig Gen Fletcher, "[W]hat was your primary purpose in issuing that order?" Brig Gen Fletcher explained that Operation Nighthawk was designed to obtain random urine samples on the weekend before the drugs were out of the airmen's bodies. He testified that "his ultimate goal" was to deter drug use "or at least make them think twice about going and doing something on a weekend, knowing that there's potential that they may very well get tested on the weekend." He testified that deterrence was necessary, "because we all know we don't want our kids out there working on airplanes, driving vehicles, doing very dangerous things, who have a propensity, or are using illegal drugs."

Brig Gen Fletcher testified that the command had begun planning for Operation Nighthawk two or three weeks prior to November 18. After they began planning, they learned that a rave was scheduled off base on the night of November 17-18, which also coincided with the mid-month payday. Brig Gen Fletcher decided

to schedule Operation Nighthawk to coincide with the rave and the mid-month payday.

Brig Gen Fletcher's understanding of a rave, was that it involved "a very young collection of kids getting together to have a great time." He understood that a rave included "a lot of music, which is pretty typical, a lot of lights, a lot of glitz, but on the other side, there are reports – validated reports – of a lot of drug use, alcohol, potentially sexual acts going on."

Brig Gen Fletcher testified that he had no specific knowledge that Appellant or any other military member intended to participate in the rave. Brig Gen Fletcher suspected that drugs would be used at the rave but he had no specific knowledge or reports indicating that drugs would be used.

The prosecution presented four stipulations of expected testimony from members of the command involved in the planning and execution of Operation Nighthawk: Special Agent Christopher Holton, commander of the local detachment of the U.S. Air Force Office of Special Investigations; Captain Joseph Engelbrecht III, who was then the Operations Officer for the base Security Forces Squadron; Lieutenant Colonel Daniel Rogers, the staff judge advocate; and Master Sergeant Michael Cook, administrative manager for the drug testing program. All four stipulations of expected testimony were consistent with Brig Gen Fletcher's testimony.

In response to questions by the military judge, Brig Gen Fletcher testified that he personally addresses new members of the command at a "Right Start" briefing. He testified that in his briefing he tells new airmen that there is a significant drug

problem in the Little Rock area and that drug use is "incompatible with Air Force service."

The defense did not present any evidence on the motion to suppress. In its written motion as well as its oral argument on the motion, the defense asserted that Operation Nighthawk was a pretext and a subterfuge for an illegal search.

The military judge denied the motion to suppress. The staff judge advocate did not mention the motion in his post-trial recommendation. Appellant did not challenge the validity of the inspection in his post-trial submission. In his clemency petition, appellant reminded Brig Gen Fletcher that he had testified at the court-martial, but he did not ask Brig Gen Fletcher to disqualify himself.

## Discussion

Appellant now asserts that the convening authority should have disqualified himself because he testified on controverted matters, had a personal interest in the litigation, and was put in a position where he was required to review his own actions. The Government asserts that Appellant "forfeited"[3] the issue by failing to object to the convening authority's post-trial involvement in the case.

---

[3] The Government uses the term "forfeited," used by the Supreme Court in United States v. Olano, 507 U.S. 725, 732-34 (1993), to describe a failure to preserve an issue by timely objection. See United States v. Powell, 49 M.J. 460, 463-64 (C.A.A.F. 1998). The Rules for Courts-Martial use the term "waived" rather than "forfeited" to describe a failure to preserve an issue by timely objection. See, e.g., R.C.M. 801(g), 905(e), 919(c), 920(f), 1001(g), 1005(f), and 1106(f)(6). Accordingly, we will use the term "waived" instead of "forfeited."

A convening authority's testimony at trial is not per se disqualifying, but it may result in disqualification if it indicates that the convening authority has a "personal connection with the case." United States v. McClenny, 5 C.M.A. 507, 512-13, 18 C.M.R. 131, 136-37 (1955). However, "if [the convening authority's] testimony is of an official or disinterested nature only," the convening authority is not disqualified. Id. at 513.

Based on these principles, this Court has held that a convening authority was not disqualified by testifying about his authorization for a search. United States v. Cansdale, 7 M.J. 143 (C.M.A. 1979). However, where the convening authority's testimony authenticating an official document required him to later determine the factual accuracy of that document, this Court held that the convening authority was disqualified. McClenny, 5 C.M.A. at 512-13; 18 C.M.R. at 136-37. Similarly, where the convening authority's testimony on a speedy-trial issue made it necessary for him to review his own diligence in processing the case, this Court held that his testimony was disqualifying. United States v. Reed, 2 M.J. 64 (C.M.A. 1976).

If an appellant fails to make a timely motion or objection raising the disqualification issue, the issue may be waived. See United States v. Shiner, 40 M.J. 155, 157 (C.M.A. 1994); United States v. Jeter, 35 M.J. 442, 447 (C.M.A. 1992). Where, however, an appellant was unaware of the ground for disqualification, this Court has declined to apply waiver. United States v. Fisher, 45 M.J. 159, 163 (C.A.A.F. 1996). We review issues of waiver and plain error de novo, as questions of law. See United States v. Kho, 54 M.J. 63, 65 (C.A.A.F. 2000).

We hold that the issue was waived in this case.  Appellant was aware of the convening authority's involvement, but he chose to not raise the disqualification issue at trial or in his post-trial submission to the convening authority.  See Fisher, 45 M.J. at 161-62; Jeter, 35 M.J. at 447.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.