UNITED STATES, Appellee,

v.

Specialist Ricky D. CRAION, United States Army, Appellant.

ARMY 20030281.

U.S. Army Court of Criminal Appeals.

26 Sept. 2006.

For Appellant: Captain Julie A. Caruso, JA (argued); Colonel Mark Cremin, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Michael L.

Kanabrocki, JA (on brief); Major Charles A. Kuhfahl, Jr., JA; Captain Danyele M. Jordan, JA.

For Appellee: Major William J. Nelson, JA (argued); Colonel Steven T. Salata, JA; Lieutenant Colonel Theresa A. Gallagher, JA; Major Karen J. Borgerding, JA, USAR (on brief).

Before BARTO, Senior Judge, MAHER, and HOLDEN, Appellate Military Judges.

## OPINION OF THE COURT

HOLDEN, Judge:

A general court-martial composed of officers and enlisted members convicted appellant, contrary to his pleas, of willful dereliction of duty (two specifications), forcible sodomy, indecent acts with another, and false swearing in violation of Articles 92, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 925, and 934 [hereinafter UCMJ]. The members sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1, and the convening authority approved the adjudged sentence. This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.

Appellant claims, *inter alia*, that the evidence is legally and factually insufficient to support the findings of guilty of willful dereliction of duty for engaging in sex offenses while he was supposed to be moving or accounting for supplies "in a timely manner" (Specifications 1 and 2 of Charge I) and indecent acts with another (Specification 1 of Charge III). These claims warrant discussion but do not merit relief.

## Background

The charged offenses stem from appellant's on-duty sexual activities with a high school student. At the time of the offenses, appellant was a twenty-four-year-old supply technician for the Specializations Program in the Medical Division of the United States Army Medical Research Institute of Infectious Diseases (USAMRIID), an element of the United States Army Medical Research and Materiel Command at Fort Detrick, Maryland. Appellant's unit was beginning a renovation project which required moving a large quantity of medical supplies and old equipment from the supply room to either a new warehouse or the USAMRIID basement in order to convert a supply area into office space. According to Major (MAJ) Morris–Magee, chief nurse of the medical division, the task was "an ongoing project, because it was extremely large." In describing appellant's duties, MAJ Morris–Magee testified that she tasked appellant to assist with removal and relocation of the medical supplies, and "expected [appellant] to take items to point A and point B, and to return in a timely manner." When asked whether appellant would have additional tasks upon the completion of an assigned task, MAJ Morris–Magee said, "Yes, we always have something to do." In addition to the tasks MAJ Morris–Magee assigned to appellant, Sergeant (SGT) Summerville, a wardmaster in appellant's duty section, testified that he frequently tasked appellant to account for supplies even though SGT Summerville did not directly supervise appellant.

Appellant's victim, CC, was sixteen years old at the time of appellant's offenses. She sought a job as a "summer hire" after her mother, who worked at Fort Detrick, brought her some information about the available opportunities. Major Morris–Magee hired CC to perform "little odd-and-end jobs in the ward" and to assist with the renovation project as needed. After briefly meeting appellant her first day at work, CC began establishing a working relationship with appellant when "Major Magee assigned [her] the job to clean out the kitchen area, and [appellant] helped [her] take the kitchen articles to the warehouse." After completing this project, appellant and CC continued working together on tasks MAJ Morris–Magee assigned. They also communicated electronically after appellant established a Yahoo! instant message account on the computer CC used. Among other topics discussed with appellant, CC told him that she was in high school. Appellant discussed sexuality in his face-to-face and electronic conversations with CC. While CC admitted at trial she was flirtatious with appellant,

she specifically told him "just because you're flirtatious doesn't mean you want to have sex."

More than one month after CC began her summer job with appellant's unit, CC and appellant worked on a project that required them to make several trips from an office to a warehouse that several units shared to store equipment. On two occasions, appellant kissed CC while inside the warehouse. On the final trip to the warehouse, CC testified that appellant not only kissed her but "he kept shoving [her] hand down towards his pants .... Then he took out his penis, and he placed [her] hand around his penis and started ejaculating [sic]." Appellant continued to kiss CC, then he put his hand in her pants and inserted his finger into her vagina. CC testified that she did not tell appellant to stop because she was confused and scared and did not know what to do. She said appellant stopped when he thought he heard someone at the warehouse door.

Later the same day, SGT Summerville instructed appellant to go to the USAMRIID basement, locate certain items of medical equipment, and report their location to him. Sergeant Summerville testified he told appellant to "account for it—it wasn't urgent, 'but get to it as soon as you can and just get back with me.'" According to CC, after appellant received these instructions, he told her he had to go to the basement to find two items for SGT Summerville. She testified she went with appellant to help look for the items, but neither of them could find the equipment. CC further testified she sat on a couch and waited while appellant continued to look for the items. After appellant's search proved fruitless, CC told appellant they needed to go and turned toward the door to leave. Appellant then approached her from behind, turned her around, kissed her, and engaged in forcible sodomy with her. CC related these events as follows:

[W]e started kind of drifting—like when you slow-dance—he was drifting me backwards. Next—after we were drifting, there was a table. I couldn't see the table, my back was to it. He kind of glided me down on the table and then started—we were still kissing, and then he pulled my pants down, and then I said, "What are you doing," and he didn't say anything, he just looked at me. Then he pulled my underwear down, and I said, "What are you doing," and he still didn't say anything. Then he kind of lifted my legs up, and that's when he placed—I don't know if it was before he placed his penis in my anus or after, but then I asked him if he had a condom. He shook his head .... After it started going on for a little while, then I started to feel some pain, and I said, "That hurts. Stop, that hurts." Then he slowed down for a little while. After that, he started back up and I just turned over to the side.

CC testified she was "in disbelief" about what was transpiring during the sodomy and was "really scared." She said she was not aware that appellant planned to insert his penis into her anus and did not consent to this activity. She also said even though she told appellant he was hurting her and asked him to stop, appellant did not stop until "his head turned toward the door like he'd heard something, and that's when he stopped."

Subsequently, agents from the U.S. Army Criminal Investigation Command (CID) questioned appellant about his activities with CC and appellant provided two sworn statements. In the first statement, appellant denied placing his finger in the victim's vagina. He also denied that he placed her hand on his penis and moved her hand to begin her masturbating him. This sworn statement included the following exchange between the questioning agent and appellant regarding the sex offenses:

Q. Why did you do this at work?

A. I don't know.

Q. Did you know that it is wrong to engage in this type of activity at work?

A. Yes.

The agents did not ask further questions to ascertain or clarify why appellant believed his activity in the workplace was wrongful. In the second sworn statement to CID, made nineteen days after the first, appellant admitted facts contradicting his prior sworn denials regarding the indecent acts offense and said: "I then [unbuttoned] my 2nd and 3rd

pants buttons exposing my penis. I then placed her hand on my penis and guided her to manually masturbate me. After she started doing this on her own, I then placed my hand down her pants and put my finger into her vagina." Both sworn statements were admitted at trial.

At the conclusion of the case on the merits, the military judge provided standard instructions to the members, including advising them of the elements of the offense of willful dereliction of duty. When afforded the opportunity to do so, neither party requested or proposed an instruction defining the phrase "in a timely manner," as alleged in the specifications; the military judge did not provide one sua sponte.

### Law

Article 66(c), UCMJ, imposes on this court the duty to affirm only those findings of guilty we find correct in law and fact. Therefore, we must conduct an independent, de novo review of the legal and factual sufficiency of the entire record of trial. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, a rational fact-finder could have found all the essential elements of the offense beyond a reasonable doubt. *United States v. Brooks*, 60 M.J. 495, 497 (C.A.A.F.2005); *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When applying this test, we are bound to draw every reasonable inference from the record in favor of the prosecution. *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991) (citing *Jackson*, 443 U.S. at 307, 99 S.Ct. 2781; *United States v. Laboy*, 909 F.2d 581, 588 (1st Cir.1990); *United States v. Hart*, 25 M.J. 143 (C.M.A. 1987), *cert. denied*, 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988)). In a factual sufficiency review, however, we do not show such deference to the lower court's decision.

The test for factual sufficiency is whether, after weighing the evidence of record and

making allowances for not having personally observed the witnesses, we are convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). "In sum, to sustain appellant's conviction, we must find that the government has proven all essential elements and, taken together as a whole, the parcels of proof credibly and coherently demonstrate that appellant is guilty beyond a reasonable doubt." *United States v. Gilchrist*, 61 M.J. 785, 793 (Army Ct.Crim.App.2005) (citing *United States v. Roukis*, 60 M.J. 925, 930 (Army Ct.Crim.App.), *aff'd*, 62 M.J. 212 (C.A.A.F.2005) (summary disposition)).

Specifications 1 and 2 of Charge I allege that appellant was willfully derelict in his duties[1] in violation of Article 92(3), UCMJ. That provision states: "Any person subject to this chapter who ... is derelict in the performance of his duties; shall be punished as a court-martial may direct." Willful dereliction of duty requires proof of three elements: (1) that the accused had certain duties; (2) that the accused knew of the duties; and (3) that the accused was willfully derelict in the performance of those duties. *Manual for Courts–Martial, United States* (2002 ed.) [hereinafter *MCM*], Part IV, para. 16b(3). " 'Willfully' means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act." *MCM*, Part IV, para. 16c(3)(c).

Specification 1 of Charge III alleges that appellant committed an indecent act in violation of Article 134, UCMJ. The *MCM* provides the following elements for the offense of indecent acts with another:

(1) That the accused committed a certain wrongful act with a certain person;

(2) That the act was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the

---

1. An accused may also be punished for the lesser included offense of negligent dereliction of duty if he "reasonably should have known" of a duty and then "through neglect or culpable inefficiency" was derelict in performance of the duty.

Based on the parties' asserted positions at trial that negligent dereliction of duty was not in issue, the military judge did not instruct on that lesser included offense. *See* Rule for Courts–Martial [hereinafter R.C.M.] 920(e).

armed forces or was of a nature to bring discredit upon the armed forces.

*MCM,* Part IV, para. 90b.

## Discussion

### *Dereliction of duty*

The government charged appellant with two specifications of willful dereliction of duty for departing from his duties to engage in the indecent act and forcible sodomy offenses. The first dereliction specification alleges, in pertinent part, that appellant "willfully failed to *conduct* the inventory *in a timely manner* as it was his duty to do and instead engaged in sexual activity with [CC], a sixteen year old student intern, while on duty, in uniform, and in a government facility." (Emphasis added.) Similarly, the second specification alleges appellant "willfully failed to *move* supplies *in a timely manner* as it was his duty to do and instead engaged in sexual activity with [CC] while on duty, in uniform, and in a government facility." (Emphasis added.) Appellant's challenges focus our attention on the emphasized portions of the specifications.

The first and second elements of proof for the dereliction offenses are not disputed. Sergeant Summerville gave appellant duties to conduct an inventory, MAJ Morris–Magee directed him to move supplies, and appellant knew of these duties. The issue in this case concerns the third element: whether appellant was willfully derelict in the performance of those duties. Resolution of this question turns on our determination of: (1) what the object of a "willful act" must be in order to sustain a conviction for dereliction of duty; (2) and our interpretation of the meaning of the phrase "in a timely manner" as alleged in both specifications. In particular, we must decide whether the phrase "in a timely manner" in this context simply means completing a mission or task by a specified time or also refers to a method and process of proper performance of duty without unauthorized

delay. The parties, predictably, take dramatically opposing views concerning the requisite willfulness of the acts.

At trial, the defense theory was that appellant was not derelict in his duties during the times he committed the sex offenses because he eventually completed the assigned tasks. Appellate defense counsel expanded on this position in argument before this court, urging that the willfulness required for conviction refers to action by appellant "specifically intending the natural and probable consequences of the act," and that appellant must have intended to cause the mission to fail to be guilty of this offense. In support of their theory, counsel offered SGT Summerville's opinion that the inventory task was *completed* on time [2] and MAJ Morris–Magee's statement that the *overall renovation project* was *completed* on time a month later [3] as evidence barring the convictions for dereliction of duty. Counsel further argued the estimated seven to ten minutes appellant stopped performing his duties to engage in each of the charged sex offenses is *"de minimis* and cannot support the dereliction convictions."

The government argued before this court that neither specification alleges appellant failed to *complete* the tasks assigned; rather, the specifications charge willful derelictions for *how* appellant performed the tasks. The government asserted the willfulness required for a conviction is the deliberate performance of an unauthorized act inconsistent with the performance of duty, regardless of its duration or ultimate consequence on mission completion. That is, when appellant committed intentional acts of sexual misconduct while the assigned missions were in progress, he willfully committed acts "specifically intending the natural and probable consequences of the act(s)" to be intentional, unauthorized suspended performance and departure from his assigned duties. The government advanced the theory that appellant was willfully derelict in the performance of his duties for the duration of the unauthorized delays. We

---

2. On cross-examination, SGT Summerville agreed with trial defense counsel that he did not place a specific suspense on completion of the task and opined that the task he assigned to appellant had therefore been completed on time.

3. Major Morris–Magee agreed, on cross-examination, that the supply-moving project did not have an exact completion date and the unit accomplished the overall office renovation project in a timely manner.

find the resolution of the question rests in the plain meaning of the specifications, the law governing response times to orders, and the specific facts of appellant's case.

 Had the specifications omitted reference to the timeliness of appellant's accomplishing his tasks, appellant's position would be stronger. The specifications, however, allege he failed to perform his duties "in a timely manner." The inclusion of that language specifically embraced an aspect of appellant's duties beyond the mere accomplishment of the assigned tasks. The *MCM* explains "derelict" as follows: "A person is derelict in the performance of duties when that person willfully ... fails to perform that person's duties or when that person performs them in a culpably inefficient manner." Part IV, para. 16(c)(3)(C). Willful departures from standards of conduct established in nonpunitive regulations can constitute willful derelictions of duty. *United States v. Green*, 58 M.J. 855, 859 (Army Ct. Crim.App.), *pet. denied*, 59 M.J. 141 (C.A.A.F.2003).[4] The untimely accomplishment of an assigned task is inconsistent with the duty to accomplish that task. We turn now to the question of whether appellant's discharge of his duties was timely.

Whether appellant acted "in a timely manner" must be considered in light of the facts of the case. "Manner" is defined as "[a] way of doing, being done, or happening." The RANDOM HOUSE COLLEGE DICTIONARY, REVISED EDITION 814 (1982 ed.). In deciding whether appellant's performance of military tasks was "timely," defined as "occurring at a suitable time," *id.* at 1376, the law regarding time for compliance in the analogous offense of failure to obey a lawful order is helpful. "The dispositive rule ... is that immediate compliance is required by any order which does not explicitly or implicitly indicate that delayed compliance is authorized or directed." *United States v. Wilson*, 17 M.J. 1032,

1033 (A.C.M.R.) (citing *United States v. McLaughlin*, 14 M.J. 908 (N.M.C.M.R.1982)), *pet. denied*, 19 M.J. 79 (C.M.A.1984). Immediate initiation of compliance by itself does not satisfy this rule; it is axiomatic that continued, diligent compliance is required. Even in cases where an order arguably authorizes delay, one should consider the reasonableness or unreasonableness of the delay when determining whether appellant complied with the order.

 In the instant case, appellant deviated from assigned military tasks to commit sex offenses in the work place. At argument, appellant contended the delays were reasonable because they were of short duration, lasting only seven to ten minutes each. We decline to stretch military jurisprudence to such an extent. "[T]he punitive article of dereliction of duty holds a service-member accountable for the nonperformance or faulty performance of duty *regardless of its demonstrated effect on a particular military mission*." *United States v. Lawson*, 36 M.J. 415, 422 (C.M.A.1993) (emphasis added). We hold that when examining whether a departure from duty that is not expressly authorized can be the basis of a dereliction charge, one must consider both the basis of the departure and the duration of time devoted to it. Where the basis of the departure is inherently unreasonable, such as the forsaking of one's military duties to commit a crime, even the briefest detours can constitute derelictions.

 It is well established that "[a]n act of a servant is not within the scope of employment if it is done with no intention to perform it as part of or incident to a service on account of which he is employed." RESTATEMENT (SECOND) OF AGENCY § 235 (1958). Appellant's behavior was "motivated solely by individual desires and serves no purpose of the employer." *Faragher v. City of Boca Raton*, 524 U.S. 775, 794, 118 S.Ct. 2275, 141

4. *Green* characterized derelictions as " 'actions inconsistent with [a] duty,' " quoting *United States v. Shavrnoch*, 49 M.J. 334, 337 (C.A.A.F. 1998). Cadet Green pled guilty to violating a lawful general regulation at the United States Military Academy by possessing drug paraphernalia. The court found the plea improvident because the regulation prohibiting such posses-

sion was nonpunitive, but held Cadet Green's violation of the regulatory duty constituted a willful dereliction. This approach is consistent with our superior court's analysis of nonperformance-of-duty derelictions in *United States v. Lawson*, 36 M.J. 415, 421 n. 7 (C.M.A.1993) (defining "derelict" as "one guilty of neglect of duty").

L.Ed.2d 662 (1998) (explaining "frolic and detour" analysis in vicarious liability for sexual harassment cases). We expressly reject the notion that appellant's on-duty sex offenses could be considered reasonable delays in the performance of assigned tasks. We find delay in discharging duties in order to engage in felony sex offenses with a civilian Army employee during duty hours and in the military workplace—especially when the employee is only sixteen years old—to be patently unreasonable. If we were to categorize activities into those implicitly authorized given the circumstances of an order and those unauthorized under any circumstance, appellant's on-duty sex offenses with a teenager are at the furthest extreme of the latter category. Appellant's conduct clearly violates "the punitive article specifically intended by Congress to ensure the *proper* performance of duty within the military service." *Lawson*, 36 M.J. at 422 (emphasis added).

We find appellant abandoned his duties for the time required to engage in the sex offenses. Viewing the evidence in the light most favorable to the prosecution, we find the court members had ample evidence before them to reasonably conclude the accused was derelict in his duties as alleged. To hold otherwise would reward efficient criminal offenders who intentionally and improperly abandon their duties to violate the law, but are still able to arguably complete their assigned tasks before the time for completion has passed. Sanctioning such conduct would be antithetical to the most basic principles of military service. By appellant's admission in his sworn statement admitted at trial, he knew departing from the assigned mission to engage in sexual activity in the workplace was wrongful. We agree. *Green* and *Lawson* clearly indicate that Congress intended to regulate *how* soldiers perform their duties. We are satisfied the evidence presented at trial is legally and factually sufficient to establish that appellant's complete abandonment of his assigned duties in order to commit criminal acts, however brief in duration, was a willful dereliction of those duties on both charged occasions.[5]

### Indecent Acts

■ Appellant asserts that his digital penetration and fondling of the high school student's vagina in the shared government warehouse was not indecent under the circumstances. Appellant urges that his act was not sufficiently open and notorious because the door may have been locked and he was in the warehouse with what may have been the only warehouse key. We reject appellant's assertion. "The determination of whether an act is indecent requires examination of all the circumstances, including the age of the victim, the nature of the request, *the relationship of the parties*, and *the location* of the intended act." *United States v. Rollins*, 61 M.J. 338, 344 (C.A.A.F.2005) (citing *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F.1998)) (emphasis added). In *Rollins*,[6] our superior court held, "The military has a *legitimate interest in deterring and punishing sexual exploitation of young persons by members of the armed forces* because such conduct can be prejudicial to good order and discipline, service discrediting, or both." *Rollins*, 61 M.J. at 345 (emphasis added).

■ Under the facts of this case, appellant's acts were sufficiently open and notorious. He committed the indecent acts during duty hours, in uniform, in a government warehouse shared by multiple units on a military installation. We are skeptical that appellant believed that he had exclusive access to the warehouse. The evidence was in conflict on warehouse access, and appellant stopped his sexual activity at one point when he thought he heard someone entering or attempting to enter the warehouse. Under these circumstances, the evidence is legally and factually sufficient to establish that appellant's sexual activity with CC was open

---

5. Our holding should not be interpreted as encouraging the practice of charging a dereliction of duty every time a soldier commits an offense while on duty. In certain circumstances, such charging could constitute an unreasonable multiplication of charges. *See* R.C.M. 307(c)(4). We have considered the factors from *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F.2001), and conclude that such is not the case here.

6. Rollins provided pornography to an eighteen-year-old male and then proposed they masturbate together in a public parking lot.

and notorious. *See United States v. Izquierdo*, 51 M.J. 421, 423 (C.A.A.F.1999) (pinning up a sheet to obscure roommates' view of sexual activity in barracks room does not negate open and notorious character of conduct). In addition, appellant's victim was a sixteen-year-old civilian employee working in his duty section at the time of the offenses. The proof in this case establishes the indecency of appellant's actions under a variety of theories. Thus, it is legally and factually sufficient to establish that appellant committed "an indecent act by placing his finger inside [CC's] vagina while in the basement of ... a warehouse belonging to" the United States Army.

The remaining assignments of error and the matter raised personally by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty are affirmed. The court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for three years, forfeiture of $220.00 per month for thirty-six months,[7] and reduction to Private E1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a), 10 U.S.C. §§ 858b(c) and 875(a).

Senior Judge BARTO * and Judge MAHER concur.

---

**7.** The convening authority attempted to grant financial relief to appellant's dependents. It appears that some or all of that act of clemency may not have been effective. The convening authority approved a waiver of the mandatory or "automatic" forfeitures triggered by appellant's sentence to confinement with a punitive discharge. *See* Article 58b, UCMJ. However, he took no action regarding the forfeitures actually imposed as part of the court's sentence. The staff judge advocate failed to advise the convening authority to disapprove or modify the *adjudged* forfeitures in order to create the opportunity to waive automatic forfeitures to benefit appellant's family. *See United States v. Johnson*, 62 M.J. 31, 37–38 (C.A.A.F.2005). The convening authority frustrated his own intent because he did not alter the adjudged forfeitures, leaving no money to pay the family. Confusion regarding the various forfeiture provisions is not new. The interactions between adjudged and "automatic" or "mandatory" forfeitures "involve[] technical and complicated relationships between statutory provisions, made all the more difficult by the tension between the convening authority's broad discretion over the adjudged forfeitures and restricted discretion over mandatory forfeitures." *United States v. Emminizer*, 56 M.J. 441, 445 (C.A.A.F.2002). We can effect the convening authority's intent by approving the reduced amount, considering that he specifically intended to waive forfeitures of $930.00 per month for six months. A soldier in the lowest enlisted grade in 2003 would have received $1,150.80 per month in basic pay.

* Senior Judge Barto took final action in this case prior to his reassignment.