# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, BERG, and YOB
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant JUSTIN A. BOYLE**
**United States Army, Appellant**

ARMY 20090893

Headquarters, 82nd Airborne Division
Gary Brockington, Military Judge
Lieutenant Colonel Jeffrey Hagler, Staff Judge Advocate

For Appellant:  Mr. Daniel S. Conway, Esquire (argued); Major Richard E. Gorini, JA; Captain Matthew T. Grady, JA; Mr. Daniel S. Conway, Esquire (on brief).

For Appellee: Captain Stephen E. Latino, JA (argued); Major Amber J. Williams, JA; Major Ellen S. Jennings, JA; Captain Stephen E. Latino, JA (on brief).

14 December 2011

---------------------------------
SUMMARY DISPOSITION
---------------------------------

YOB, Judge:

A panel of officer and enlisted members, sitting as a general court-martial, convicted appellant, contrary to his pleas, of conspiracy to commit assault consummated by a battery and involuntary manslaughter in violation of Articles 81 and 119, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 919 (2008) [hereinafter UCMJ], respectively.  Appellant was sentenced to be reduced to the grade of E1, total forfeiture of all pay and allowances, to be discharged with a bad-conduct discharge, and to be confined for twenty-four months.  The convening authority approved the findings and the adjudged sentence.

We review this case pursuant to Article 66, UCMJ.  Appellant raised five assignments of error, only one of which merits discussion, but no relief.  This assignment of error alleges the evidence is factually and legally insufficient to support the findings of guilty to both charges.  Regarding the conspiracy charge, appellant contends there was no evidence of an agreement to commit an assault consummated by a battery.  As to the involuntary manslaughter charge, appellant

contends the evidence was insufficient to demonstrate that appellant caused or was the proximate cause of the death of the victim in this case.

## BACKGROUND

The evidence shows that on the evening of 20 July 2008, a number of Soldiers from the 82nd Airborne Division, including appellant and the victim, were drinking at an off-post bar in Fayetteville, North Carolina. The victim was six-feet three inches tall and weighed 250 pounds. At about 0200 in the morning, the victim started sulking and provoked a confrontation when he drank another patron's beer without permission. Appellant and other Soldiers defused the situation and took the victim from the bar as they left. Once outside, the victim, who appeared intoxicated, wanted to go back and fight the bar security staff. After his fellow Soldiers discouraged him from doing this, the victim ran away from the group down a road. While running, the victim stopped long enough to pick up a Soldier, who was merely a bystander, and the victim threw him into a parked truck. The victim then ran into nearby woods and was pursued by several other Soldiers.

At first the victim hid under a trailer in a fenced area. After he was discovered by the pursuing Soldiers, the victim began to run around inside of the enclosure. The Soldiers decided to wait until the victim got tired, but the victim escaped under the fence and ran into the woods. The Soldiers pursued and caught the victim several times, only to have him break free. The victim acted violently during these struggles, choking one of the other Soldiers before he resumed his flight, and throwing punches and kicking when he was restrained. At one point, at least four Soldiers held the victim as appellant wrapped his legs around the victim and executed a "rear naked" choke hold while telling the victim to "go to sleep." Once the victim passed out, they carried him back toward a vehicle. He began to regain consciousness so the Soldiers resumed their positions holding him down while appellant applied the choke hold a second time, again rendering the victim unconscious.

The Soldiers acquired zip-tie restraints from the bar security staff and bound the victim's hands and feet before putting him in the back seat of a car. When the victim was in the car he made gurgling and snoring sounds and muttered. When they arrived at Fort Bragg, the victim was unresponsive and had no pulse. The Soldiers removed the zip-ties and performed CPR on the victim until paramedics arrived. Emergency responders transported the victim to a hospital where he was pronounced dead a short time later.

## LAW AND DISCUSSION

The standard of review for factual and legal sufficiency by this Court is de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007); *United States v.*

*Craion*, 64 M.J. 531, 534 (Army Ct. Crim. App. 2006). In resolving questions of legal sufficiency, this court "is bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *Craion*, 64 M.J. at 534. In weighing factual sufficiency, we apply "neither a presumption of innocence nor a presumption of guilt," and we make an "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

Applying these standards, we find the evidence factually and legally sufficient to sustain a finding of guilt as to conspiracy to commit an assault consummated by a battery. It is well settled that the agreement in a conspiracy need not be in any "particular form or be manifested in any formal words," and that "a conspiracy may be contemporaneous with the substantive offense." *United States v. Matias*, 25 M.J. 356, 362 (C.M.A. 1987) (quoting *United States v. Jackson*, 20 M.J. 68, 69 (C.M.A. 1985)). Evidence clearly showed that the victim was intentionally strangled to unconsciousness by appellant while other Soldiers held the victim down. Shortly after the first strangulation, as the victim began to regain consciousness, the Soldiers "resumed the positions" they had taken before and again strangled him to unconsciousness. Restraining a person while strangling him is a harmful and offensive touching of another sufficient to find there was an assault consummated by a battery, regardless of the intent to harm. While some amount of restraint of the victim would have been lawful under these circumstances to provide for the safety of the victim or others, restraint and strangulation constituted an excessive amount of force for the Soldiers to use in this circumstance. While leaving their fellow Soldier in an impaired state in a wooded area in the middle of the night would not have been an appropriate action, these Soldiers had other options short of strangulation, including enlisting the aid of others, to include local civil authorities or members of their chain of command. We find sufficient evidence that there was an implicit understanding among the participants to resume their restraining positions to carry out the second strangulation, which constituted a conspiracy to commit the unlawful act, and there is proof of each element of the offense of conspiracy to commit an assault consummated by a battery.

We also hold that the evidence finding appellant's actions to be the proximate cause in the involuntary manslaughter is factually and legally sufficient. The medical examiner who performed the autopsy provided her expert opinion that appellant's choke hold strangled the victim and led to death by asphyxiation. The examiner based this opinion on several factors, to include her post-mortem examination of the injuries to the victim's neck as well as in-court and out-of-court descriptions from eye-witnesses of the events leading to the victim's death. A defense expert testified that the victim may have had an enlarged heart and opined that this was the likely cause of death. This testimony was contradicted by a government rebuttal expert in forensic pathology who detailed reasons to support his conclusion that the victim died proximately from asphyxiation caused by

strangulation, and who noted that under these circumstances, an enlarged heart would not have contributed significantly to death. The evidence was clearly sufficient to support proximate cause, and the totality of evidence was sufficient to prove each element of the offense of involuntary manslaughter.

## CONCLUSION

We have considered the record of trial, the assigned errors, the briefs submitted by the parties, and oral arguments by both parties on the assignments of errors raised. On consideration of the entire record, we hold the findings of guilty and sentence adjudged and approved by the convening authority to be correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge KERN and Judge BERG concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court