CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant HECTOR NICOLA**
**United States Army, Appellant**

ARMY 20150781

Headquarters, 2d Infantry Division and Republic of Korea-United States Combined
Division
Tiernan P. Dolan, Military Judge
Lieutenant Colonel Timothy P. Hayes, Jr., Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Major Christopher D. Coleman, JA; Captain Cody Cheek, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Julie Borchers, JA; Captain Cody Cheek, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Joshua B. Banister, JA (on brief).

28 March 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*[1]

MULLIGAN, Senior Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation, one specification of abusive sexual contact, and one specification of indecent viewing, in violation of Articles 92, 120, and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 920c (2012 & Supp. I). The panel acquitted

---

[1] Corrected.

NICOLA—ARMY 20150781

appellant of one specification of sexual assault in violation of Article 120, UCMJ. The convening authority approved the adjudged sentence to a bad-conduct discharge and reduction to the grade of E-1.

Appellant's case is before this court for review under Article 66, UCMJ. Appellant raises four assignments of error. Only the error regarding the legal and factual sufficiency of the Specification of Charge I merits discussion. It also merits relief.[2]

## BACKGROUND

At the end of September, 2014 appellant was stationed at Camp Casey, South Korea when Specialist (SPC) AA arrived to her new duty station, Camp Hovey, South Korea. On Friday night, 10 October 2014, appellant was at a "smoke pit," outside a barracks playing a drinking game with other soldiers. Specialist AA was

---

[2] Appellant's second assignment of error is mooted by our decision with respect to the legal and factual sufficiency of the Specification of Charge I.

Appellant's third assignment of error asserts a hearing pursuant to *United States v. Dubay*, 17 U.S.C.M.A 147, 37 C.M.R. 411 (1967), is necessary to determine whether the panel contained interlopers. All of the panel members that sat on appellant's court-martial were personally selected by the convening authority to serve as panel members. *See* Def. App. Ex. B; *see also* UCMJ, art 25(d). The defense has not proffered any evidence to suggest that the other procedures of selection of the court-martial panel in appellant's specific case were not followed and therefore were not at the command of the convening authority pursuant to his prior approved selection procedures. *See* Def. App. Ex. A. Furthermore, the error with respect to CW5 AWR was both affirmatively remedied at trial by the government and subsequently waived by the defense.

Appellant's last assignment of error asserts the evidence is both legally and factually insufficient to support a conviction for wrongfully viewing SPC AA's private area, as appellant was acquitted of sexual assault. We see nothing inconsistent with the panel acquitting appellant of sexually assaulting SPC AA while at the same time convicting appellant of wrongfully viewing SPC AA based on her testimony of appellant being in the shower with her. *See United States v. Rosario*, 76 M.J. 114, 117-18 (C.A.A.F. 2017).

We have also fully considered each of the issues personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and have determined they merit neither discussion nor relief.

2

in her room doing homework when she decided to take a smoke break.  Specialist AA joined the game and lost, drinking a total of four beers.

After the game ended, the group went off-post to several bars.  At the first bar appellant gave SPC AA three shots of tequila, which she drank.  She started to feel dizzy and stepped outside to get some fresh air.  The group came with her and they then decided to go to another bar.  Specialist AA drank at the second bar, but had no recollection of how much or what she drank.  At some point, appellant told SPC AA she needed to go back to her barracks room and indicated she was drunk.  Appellant then escorted SPC AA outside, isolating her from the group.

Specialist AA was dizzy and nauseous.  Appellant had his arm around her waist and walked her down the street to an alleyway.  Appellant leaned her up against a wall, tried to kiss her, and then put his hand down the inside of her pants.  Appellant's hand was over the top of SPC AA's underwear, rubbing her genitals in a circular motion.  Specialist AA felt appellant's erect penis pressed against her thigh.  Specialist AA told him to stop and vomited.  She continued vomiting on the sidewalk while on her hands and knees.

Appellant arranged for a taxi and took SPC AA back to her barracks.  Specialist AA was in a drunken stupor.  Appellant and a female soldier, Private First Class (PFC) Long, gave SPC AA some crackers and water outside the barracks.  Specialist AA threw up again.  Appellant testified at trial that he had never seen anyone as drunk as SPC AA was that evening.  SPC AA could not walk straight and appellant guided her back to her room with PFC Long following behind them.  Appellant laid SPC AA in her bed, fully clothed, with her shoes on.  PFC Long told appellant they should leave, but appellant insisted on staying to ensure SPC AA was alright.  Eventually, PFC Long left appellant in SPC AA's room and told appellant she would be back in about fifteen minutes.

Within an hour PFC Long returned to SPC AA's room with another female, lower-enlisted soldier.  They heard running water in SPC AA's room and knocked on the door.  There was no response, so PFC Long knocked harder.  No one answered the door.  They went to the charge of quarters desk to get the master key to SPC AA's room and also woke SPC AA's platoon sergeant, who was male.  All three soldiers arrived in the hallway outside SPC AA's door.  Appellant opened the door.  Appellant was on the phone and was eventually told to leave because SPC AA's platoon sergeant was there to assist.  Appellant left.

The water in SPC's AA's shower was running and SPC Long checked on SPC AA.  She found SPC AA lying naked in the fetal position on the shower floor, letting the water hit her.

Specialist AA had no memory of arriving back at the barracks. At trial, she testified the next thing she remembered was being naked in the shower. She testified appellant was naked in the shower with her and forced his penis in her mouth. Appellant was acquitted of this charge.

## LAW AND DISCUSSION

Appellant asserts his conviction of violating para. 4-14b of Army Regulation (AR) 600-20, Army Command Policy (prohibiting relationships between soldiers of different ranks) is legally and factually insufficient because SPC AA was incapable of consenting to a relationship at the time of the charged acts.[3] The government agrees, but counters the law and facts support an attempted violation of the regulation. We disagree.

For more than a decade our case law has held "the victim's conduct is relevant to whether or not a prohibited relationship was established" for purposes of violating the prohibited relationship provisions of AR 600-20. *United States v. Morgan*, ARMY 20000928, 2004 CCA LEXIS 423, at *7 (Army Ct. Crim. App. 20 Feb. 2004) (mem. op.). Our case law is clear, it takes two to form a relationship. *United States v. Oramas*, ARMY 20051168, 2007 CCA LEXIS 588, at *6-8 (Army Ct. Crim. App. 29 Mar. 2007) (mem. op.) (holding a solicitation to engage in sexual acts does not amount to a relationship as envisioned by AR 600-20 when the verbal advance was rejected); *United States v. Patrick*, ARMY 20130761, 2015 CCA LEXIS 129, at * 5-6 (Army Ct. Crim. App. 24 Mar. 2015) (summ. disp.) (holding a plea to wrongfully engaging in a prohibited relationship improvident where the appellant's advances were rejected, but affirming the lesser-included offense of attempt); *United States v. Delgado*, ARMY 20140927, 2016 CCA LEXIS 7, at *5, 7 (Army Ct. Crim. App. 6 Jan. 2016) (mem. op.) (holding while the evidence supported a prohibited relationship through an assortment of acts, the only charged act of a non-consensual sexual assault could not form the basis to establish a consensual inappropriate relationship); *United States v. Birdsong*, ARMY 20140887, 2016 CCA LEXIS 434, at *6 (Army Ct. Crim. App. 8 Jul. 2016) (summ. disp.) (holding a plea to wrongfully engaging in a prohibited relationship improvident where the appellant's advances were rejected, but affirming the lesser-included offense of attempt); *United States v. Huertalopez*, ARMY 20150059, 2017 CCA LEXIS 30, at * 4 (Army Ct. Crim. App. 19 Jan. 2017) (summ. disp.) (holding a prohibited relationship could not be formed where the victim declined the advances, but affirming the lesser-included offense of an attempt based on the advances). While a relationship can be coercive,

---

[3] Appellant was charged with violating the regulation by "entering [SPC AA's] barracks room alone with her while she was highly intoxicated and remaining inside alone with her for approximately one hour without a professional purpose."

manipulative, and need not be "consensual" as that term is generally understood, one cannot form a "relationship" with an unconscious or incapacitated person.

The government concedes the evidence at trial showed SPC AA first rebuffed appellant's advances and was then incapable of consenting because of impairment by alcohol. These facts legally precluded the formation of a prohibited relationship at the time appellant entered SPC AA's barracks room and remained therein. The government asserts, however, appellant's acts of entering and remaining in SPC AA's room for an extended period of time constituted the overt acts of an attempted violation of the regulation.

To affirm the lesser-included offense of attempt we must find: (1) that appellant did a certain overt act; (2) that the act was done with the specific intent to violate the prohibited relationship provisions of AR 600-20, para. 4-14b; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *Manual for Courts-Martial*, pt. IV, ¶ 4.b. While we agree that entering and remaining in another's barracks room conceivably could constitute substantial steps toward an attempted violation of AR 600-20, we are not ourselves convinced the acts in this case were done with the specific intent to engage in a prohibited relationship.[4]

There is substantial evidence in the case to support both SPC AA was in a drunken stupor upon arriving back to her barracks and appellant was well aware of this fact. According to SPC AA's testimony appellant remained in the room and sexually assaulted her in the shower. Although acquitted of this conduct, we see nothing in the evidence presented to indicate appellant's specific intent while entering and remaining in the room was anything other than to undress and shower naked with an incapacitated individual. Appellant was already aware SPC AA had vomited multiple times, could barely walk on her own, and was incapable of

---

[4] The standard of review for factual and legal sufficiency by this Court is de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007); *United States v. Craion*, 64 M.J. 531, 534 (Army Ct. Crim. App. 2006). In resolving questions of legal sufficiency, this court is "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *Craion*, 64 M.J. at 534. In weighing factual sufficiency, we apply "neither a presumption of innocence nor a presumption of guilt," and we make an "independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

consenting.[5] Conversely, appellant's defense relied on the acts having never occurred. According to appellant's testimony he had never seen anyone as drunk as SPC AA was that evening and his intention in staying in the room was to ensure SPC AA was alright. Under either version of events, appellant was well aware that SPC AA was incapable of consenting to any type of relationship.

As such, we decline the government's invitation to affirm the lesser-included offense of attempt and grant appropriate relief in our decretal paragraph.

**CONCLUSION**

The findings of guilty of Charge I and its Specification are set aside and dismissed with prejudice. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are confident that based on the entire record and appellant's course of conduct, he would have been sentenced to at least that which was adjudged, and accordingly we AFFIRM the sentence.

Judge FEBBO and Judge WOLFE concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court

---

[5] To be clear, we do not hold that it is a legal impossibility for an accused to be convicted of both sexual assault and entering into or attempting to enter into a prohibited relationship. However, the facts in this case are insufficient for us to do so.