# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant JASON A. SCHNELLE**
**United States Army, Appellant**

ARMY 20160405

Headquarters, 1st Cavalry Division (Rear)(Provisional)
Lanny Acosta, Military Judge
Colonel Oren H. McKnelly, Staff Judge Advocate (pretrial)
Lieutenant Colonel Scott E. Linger, Staff Judge Advocate (post-trial)

For Appellant: Colonel Mary J. Bradley, JA; Major Brendan Cronin, JA; Major Payum Doroodian, JA (on brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Austin L. Fenwick, JA; Captain Sandra L. Ahinga, JA (on brief).

27 April 2018

----------------------------------
SUMMARY DISPOSITION
----------------------------------

FEBBO, Judge:

In this case, we discuss whether the testimony presented at trial supports the military judge's finding of guilty for communicating a threat, as well as the trial procedures used by the military judge upon rejecting appellant's modified plea of guilty to this offense. Finding no error, we affirm the findings of guilty and sentence.

This case is before us for review pursuant to Article 66, UCMJ. On appeal appellant's sole assignment of error is that the evidence presented at trial for the communicating a threat offense was legally and factually insufficient. Appellant

does not challenge the other charges and specifications of his guilty plea.[1] We have also considered the matters personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit.

## BACKGROUND

Appellant had prior service in the Marines prior to entering the Army. Between these service branches, he served four combat tours in Iraq and Afghanistan. According to his former Marine commander, appellant and his unit experienced almost daily contact with the enemy while deployed to Iraq. During one attack, appellant risked his life under enemy fire to pull a wounded Marine to safety; another time, appellant led his team to recover a seriously wounded Iraqi soldier.

Life away from the deployments painted a different picture of appellant.

From the very beginning of their marriage, appellant and his spouse, JS, engaged in domestic disputes and violence. Their arguments were fueled by alcohol, allegations of infidelity, and ultimately, appellant's intentional violation of no contact orders. On several occasions, appellant physically assaulted JS in front of her children. On one occasion, JS was hospitalized with a nasal fracture and other injuries. This conduct led to a variety of charges to include aggravated assaults on JS.

Pursuant to his pretrial agreement, the military judge conducted a *Care*[2] inquiry with the appellant on all the charges, to include the communicating a threat charge. The appellant was charged with threatening JS when he told her "[y]ou have 30 days to move out [of the house] or I'll kill you." During appellant's providence inquiry, appellant attempted to plead guilty to communicating a threat through exceptions and substitutions, in that he threatened her with the language "[y]ou have 30 days to move out [of the house] and I'll pay your way back to Wisconsin."

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of willfully disobeying a superior commissioned officer, failure to obey a lawful general regulation, two specifications of assault consummated by battery, three specifications of aggravated assault, and two specifications of child endangerment in violation of Articles 90, 92, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 928, 934 (2012)[UCMJ]. Contrary to his plea, the military judge convicted appellant of communicating a threat in violation of Article 134, UCMJ. The military judge sentenced appellant to a bad-conduct discharge, confinement for 52 months, and reduction to the grade of E-1. In accordance with a pretrial agreement, the convening authority approved 45 months confinement, credited appellant with 149 days against the sentence to confinement, and approved the rest of the adjudged sentence.

[2] *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

Appellant explained this was threatening to his spouse since she wanted to avoid family and legal issues in Wisconsin and would not be able to financially support herself and her two children. The military judge ultimately rejected appellant's modified plea to this charge and entered a plea of not guilty, reasoning the substituted language did not legally state an offense since appellant's admission did not amount to a true threat.

Afterward, the government and defense counsel stated on the record that the parties still wanted to be bound by the pretrial agreement notwithstanding appellant's failure to comply with a material term. After the government stated their intention to proceed with the threat charge, the military judge allowed the government to immediately call JS to the stand to prove the offense. That is, the military judge provided for a contested hearing in the middle of the *Care* inquiry, prior to the acceptance of the guilty plea on the other offenses. The defense did not object to the timing and proposed trial procedure for the contested hearing.

JS testified that, during an argument, appellant sat on top of her and told her, "she had 30 days to move out, otherwise he was going to kill me, take me to the Everglades, dump me off so the alligators could eat me, and then raise my children off the grid as his own." She interpreted those words as a threat to hurt her. The government asked a total of nine questions, the defense counsel did not cross-examine the spouse, and both parties rested their case on the merits. After JS's testimony, the military judge continued with the *Care* inquiry by discussing the terms of the pretrial agreement with appellant. Prior to taking a recess to deliberate and announce findings, defense counsel again declined the military judge's invitation to make an opening and closing statement or present any additional evidence on the contested charge.

After a short recess, the military judge found appellant guilty of the charges and specifications to which he pleaded guilty and guilty of communicating a threat to his spouse.

## LAW AND DISCUSSION

### *Legal and Factual Sufficiency*

Appellant asserts on appeal that the evidence presented at trial was both legally and factually insufficient to establish all the essential elements of the communicating a threat offense beyond a reasonable doubt. Appellant points to the "dearth of evidence" presented during the spouse's roughly one page of testimony. In particular, appellant contends that no evidence was presented to satisfy the terminal elements of the Article 134 offense. We disagree.

Under Article 66(c), UCMJ, we may affirm only those findings of guilty that we find correct in law and fact and determine, based on the entire record, should be

3

affirmed. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). The test for legal sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the government, a fact-finder could rationally have found all of the essential elements of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Blocker*, 32 M.J. 281, 284-85 (C.M.A. 1991). In resolving questions of legal sufficiency, this court is "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Craion*, 64 M.J. 531, 534 (citations omitted).

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "[A]fter weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

We find the charged offense was legally and factually sufficient. JS's testimony clearly established the first three elements of communicating a threat. As for the terminal element, we are satisfied that a fact-finder could rationally find appellant's conduct was service discrediting. As our superior court has held, "proof of the conduct itself <u>may</u> be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that, under all of the circumstances, it was of a nature to bring discredit upon the armed forces." *United States v. Norman*, 74 M.J. 144, 150 (C.A.A.F. 2015) (quoting *United States v. Phillips*, 70 M.J. 161, 163 (C.A.A.F. 2011)). Appellant uttered what was a credible threat to kill JS. Under the circumstances of this case, the evidence appellant threatened the mother of two children was of a nature to bring discredit upon the armed forces. We find JS's testimony, even in its brevity, credible. We too are satisfied beyond a reasonable doubt that, under the circumstances of this case, appellant's conduct was of a nature to bring discredit on the armed forces.

### *Taking Testimony of a Government Witnesses on the Merits During the Care Inquiry*

We note that the challenge to legal and factual sufficiency to the communicating a threat offense was partially caused by the trial court's unusual procedure of injecting a contested trial on one offense in the midst of appellant's *Care* inquiry.[3]

---

[3] The *Manual for Courts-Martial* gives the military judge the responsibility and deference to ensure that the court-martial procedures are conducted in a fair and

(continued . . .)

SCHNELLE—ARMY 20160405

Although appellant raises no due process concerns regarding the manner in which the contested portion of the trial was conducted, we believe it warrants a brief discussion.

For the contested portion of the trial: (1) neither side gave an opening statement; (2) although the appellant was allowed to present evidence, the procedure was unorthodox; (3) neither side gave a closing statement; (4) the military judge did not explicitly ask appellant if he wanted to testify regarding the contested specification.

In hindsight, more could have been done on the record to explain the procedures to appellant. For example, the military judge could have clarified on the record that appellant had chosen not to testify on the merits. However, the defense counsel did not object to the manner in which the military judge conducted the proceeding, and specifically waived cross-examining the victim, presenting evidence, or giving argument. The military judge provided the defense an opportunity to cross-examine appellant's spouse and properly present defense evidence to challenge the specification.

In considering the entire record, the procedure did not materially prejudice a substantial right of the appellant.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

---

(continued . . .)
orderly manner. *See* Rule for Court-Martial [R.C.M. 102]; R.C.M. 801(a)(3) discussion (the military judge is empowered to set the time for each session of a court-martial and "prescribe the manner and the order in which proceedings may take place"). The military judge decides the order in which witnesses may testify. *Id*. The military judges also controls the mode and order of examining witnesses and presenting evidence. *Id*. In short, the rules allow the military judge to keep order in the courtroom.

5